1   ARTHUR M. EIDELHOCH, Bar No. 168096
    WILLIAM HAYS WEISSMAN, Bar No. 178976
2   LITTLER MENDELSON
    A Professional Corporation
3   650 California Street, 20th Floor
    San Francisco, CA  94108.2693
4   Telephone:   415.433.1940

5   Attorneys for Defendants
    CENTRAL PARKING, INC.
6   NEW SOUTH PARKING, INC.

7

**ORIGINAL
FILED**

OCT - 3 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8                UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

**C 07 5097**

10  WILLIAM HENSHALL,                    Case No.

11                Plaintiff,             **DEFENDANTS' NOTICE TO FEDERAL
                                         COURT OF REMOVAL OF CIVIL
12       v.                             ACTION FROM STATE COURT
                                         PURSUANT TO 28 U.S.C. SECTIONS 1331,
13  CENTRAL PARKING, INC.; NEW          1332, 1441 AND 1446**
    SOUTH PARKING, INC.,
14
                 Defendants.
15

16  TO: THE CLERK OF THE ABOVE TITLED COURT AND PLAINTIFF WILLIAM
17
    HENSHALL, IN PROPER:
18
             PLEASE TAKE NOTICE that Defendants CENTRAL PARKING, INC. and NEW SOUTH
19
    PARKING, INC. ("Defendants") hereby effect the removal of the below-referenced action from the
20
    Superior Court in the State of California for the County of San Mateo to the United States District
21
    Court for the Northern District of California.  In support of its Notice of Removal Defendants state
22
    the following grounds:
23
             1.     *State Court Complaint:*  On September 6, 2007, Plaintiff William Henshall
24
    ("Plaintiff") filed this action against Defendants in Superior Court of the State of California, County
25
    of San Mateo, entitled *William Henshall v. Central Parking, Inc., New South Parking, Inc., Does 1 –*
26
    *50*, Case No. CIV 465862.  The Complaint alleges that Defendants' failure to retain him as an
27
    employee constitutes a breach of contract, wrongful termination and caused negligent infliction of
28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL
FIRMWIDE:83191736.1 800000.3500                                           Case No.:

1 emotional distress, in that Defendants should have allowed Plaintiff to be employed without

2 providing an Internal Revenue Service (IRS) Form W-4 and Department of Homeland Security

3 (DHS) Form I-9. Plaintiff contends that Defendants decision not to employ Plaintiff for his refusal

4 to provide an IRS Form W-4 and DHS Form I-9 violated his rights under the United States

5 Constitution as a "lawful de jure jus sanguinis & jus soli free white State Citizen." The Petition

6 seeks various forms of compensatory damages and declaratory relief. A true and correct copy of the

7 Summons and the Complaint and its accompanying exhibits are attached as Exhibit 1.

8     2.   *Notice of Motion:* On September 10, 2007, Plaintiff filed a Notice of Motion on an

9 Order to Show Cause seeking injunctive and/or declaratory relief. A true and correct copy of the

10 Notice of Motion and Declaration in Support of the Order to Show Cause are attached as Exhibit 2.

11     3.   *Service of Complaint:* Defendants have not been served with the Complaint.

12 However, Plaintiff mailed a copy of the Complaint to Defendants' counsel on September 19, 2007,

13 which was received on or after that date. Defendants do not have a copy of a proof of service. A

14 true and correct of Plaintiff's September 19, 2007, letter is attached as Exhibit 3.

15     4.   *Hearing on Complaint in State Court:* There is currently a hearing scheduled on

16 Plaintiff's Complaint for October 4, 2007, at 9:00 a.m. at the Superior Court of the State of

17 California, County of San Mateo, located at 400 County Center, Redwood, City, California. The

18 hearing appears to be for injunctive and declaratory relief being requested by Plaintiff in his

19 Complaint. A true and correct copy of the Notice of Hearing is attached as Exhibit 2.

20     5.   *Federal Question Basis for Removal:* This case is a civil action over which this Court

21 has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by

22 Defendants pursuant to 28 U.S.C. §§ 1441(b) and 1446 in that the claims set forth in the Complaint

23 arise out of the United States Constitution and/or the laws of the United States. Specifically,

24 Petitioner asserts that he is not a "citizen" with the meaning of Section 1 of the Fourteenth

25 Amendment to the United States Constitution, and that the Fourteenth Amendment to the United

26 States Constitution was not properly ratified by the Several States and is therefore invalid.

27 Complaint, pp. 17, 25-27. Such issues are properly federal questions.

28     **6.**   *Diversity Jurisdiction Basis for Removal:* This case is also a civil action over which

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

NOTICE OF REMOVAL
FIRMWIDE:83191736.1 800000.3500

2.

Case No.:

1   this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this

2   Court by Defendants pursuant to 28 U.S.C. §§ 1441(b) and 1446 in that it is a suit between citizens

3   of different states.  Plaintiff is a resident of the State of California.  Defendant Central Parking, Inc.,

4   is a Tennessee corporation with its principal place of business in Tennessee.  Defendant New South

5   Parking is a Tennessee general partnership comprised of Defendant Central Parking, Inc., and Global

6   Parking Systems, LLC, a Louisiana limited liability company.  The amount in controversy exceeds

7   the sum of value of $75,000, in that Plaintiff alleges negligent infliction of emotional distress in the

8   amount of $5 million.  Complaint, Prayer for Relief, ¶ 4, p. 31.  He also seeks $20 in compensatory

9   or exemplary damages for bad faith.  Complaint, Prayer for Relief, ¶ 5, p. 31.

10       7.     *Timing of Removal*:  Fewer than thirty (30) days have elapsed since September 19,

11   2007, the date on which Defendants' counsel was mailed a copy of the Summons and Complaint.  28

12   U.S.C. § 1446(b).

13       8.     This Notice of Removal has been signed by counsel for Defendants, in compliance

14   with the requirements of 28 U.S.C. § 1446(a).

15       9.     By filing this Notice of Removal Defendants are not waiving any defenses available

16   to them.

17       WHEREFORE, Defendants respectfully submit that they have properly and timely removed

18   this action from the Superior Court of the State of California, County of San Mateo, to this Court.

19   Dated: October 3, 2007

20

21

22   WILLIAM HAYS WEISSMAN
     LITTLER MENDELSON

23   A Professional Corporation
     Attorneys for Defendants

24   CENTRAL PARKING, INC.
     NEW SOUTH PARKING, INC.

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

NOTICE OF REMOVAL
FIRMWIDE:83191736.1 800000.3500                    3.                           Case No.:

# EXHIBIT 1
# (INCLUDES EXHIBITS A-S)

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

## Central Parking Inc.,
## New South Parking Inc.,
## Does 1 thru 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

## William Henshall

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|
| | **ENDORSED FILED**<br>**SAN MATEO COUNTY**<br><br>SEP 0 6 2007<br><br>Clerk of the Superior Court<br>By  R. Montgomery<br>DEPUTY CLERK |

You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.

A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.

If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

*Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.*

*Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.*

*Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.*

*Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).*

The name and address of the court is: *(El nombre y dirección de la corte es)*

**CASE NUMBER** *(Número del Caso)* **CIV 4 6 5 8 6 2**

San Mateo County Superior Court --Southern Division
400 County Center
Redwood City, California

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

William Henshall

First Judicial District
P. O. Box 281676
San Francisco, California, USA 650-255-3078

| DATE:<br>*(Fecha)*  **SEP   6 2007** | JOHN C. FITTON Clerk, by<br>*(Actuario)* | **R. MONTGOMERY** | , Deputy<br>*(Delegado)* |
|---|---|---|---|

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*:

    under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (individual)
            ☐ other:

4. ☐ by personal delivery on *(date)*:

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) [Rev. January 1, 1984]

*(See reverse for Proof of Service)*
**SUMMONS**

WEST GROUP
Official Publisher

CCP #122 20

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco,  California, USA
650-255-3078
Plaintiff in Propria Persona/Sui Juris

**ENDORSED FILED**
SAN MATEO COUNTY

SEP 0 6 2007

Clerk of the Superior Court
By ___R. Montgomery___
DEPUTY CLERK

# IN THE SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN MATEO

| | | |
|---|---|---|
| **William Henshall,** | ) | **CIV**4 6 5 8 6 2 |
| | ) | CASE No. _____ |
| Plaintiff | ) | |
| | ) | ***COMPLAINT*** |
| | ) | |
| vs. | ) | Wrongful Termination; |
| | ) | |
| Central Parking Inc. | ) | Negligent Infliction of |
| | ) | |
| New South Parking Inc. | ) | Emotional Distress; |
| | ) | |
| | ) | Breach of Contract; |
| Does  1 thru 50 | ) | |
| | ) | ***TRO***  requested; |
| Defendants | ) | |
| | ) | |
| | ) | Jury Trial Demanded ; |
| | ) | |

Complaint for Damages Page 1  of  32

COMES NOW Plaintiff William Henshall in his own proper person sui juris, a lawful de jure free white State Citizen (see e.g. *Article IV, Section 2 of the Constitution for the united States {1787/1791}* and *Article II, Section 1 of the California Constitution (1849)*), to complain of defendants as follows:

1.  That upon information and belief that Plaintiff believes that Defendant Central Parking Inc. (CPI) is a corporation organized pursuant to the laws of the 'state' of Tennessee with it's home office in Nashville, Tennessee;

2.  That upon information and belied that Plaintiff believes that Defendant New South Parking Inc. (NSP) is a wholly owned subsidiary of Defendant Central Parking Inc.;

3.  That both Defendants are doing business in the 'state' of California, with offices at 300 Kearny Street, San Francisco, California and operate the parking concession at the San Francisco International Airport (SFO);

## JURISDICTION and VENUE

While not lending itself to any obvious connection to any existing statutes (and with there being a considerable risk vis-à-vis issues of status & standing and jurisdiction & venue if any statute enacted by the de facto government is relied upon, Petitioner invokes *Article VI, Section 2 of the California Constitution (1849)* as designating this court as a common law court of general

jurisdiction. In addition, as a matter of supplementary jurisdiction, Plaintiff cites ***Section 11 of the Judiciary Act of 1789*** as vesting this court with ***concurrent*** jurisdiction over any federal claims that may arise during the course of the proceedings.

In addition, any issues of violations of "civil rights", most especially those emanating from federal law are specifically eschewed as being in fundamental conflict with the status & standing of Plaintiff and the rights sought to be vindicated herein.

Not arising under any known provision of 'state' statutory law, Plaintiff invokes the logic and reasoning of the supreme Court of the united States for the invocation of jurisdiction on "***Bivens***" principles -- see e.g. ***Bivens vs. Six Unknown Federal Agents 403 US 388***, wherein it was held that an action can be brought based ***directly*** on a provision or provisions of the Constitution alleged to have been violated.

In the instant case, among other provisions of the ***California Constitution (1849)*** that would be relevant here are ***Article II, Section 1***, with regard to the establishment of the lawful de jure Citizenry and sovereign Body Politic of the State of California, ***Article I, Sections 1 and 3***, having to do with the defending of life,

Complaint for Damages Page 3 of 32

acquisition and use of property, and the right to a trial by jury, *Article I, Section 12* , making the military power subordinate to the civil authorities, *Article I, Section 16* with regard to the prohibition on Bills of Attainder, and *Article I, Section 21* with reference to the fact that the people retain rights not enumerated in the Constitution.

Finally, the common law does recognize, among other actions, those for breach of contract and negligent infliction of emotional distress (see *Common Law Pleading* by Benjamin Shipman (1894)), and there is a corpus of decisional case law in California sustaining the jurisdiction of the courts in wrongful termination cases -- see e.g. *Foley v Interactive Data 47 Cal 3rd 654, Scott v PG&E 11 Cal 4th 454* and *Tameny v Atlantic Richfield 27 Cal 3rd 167, Pugh v See's Candies 116 Cal. App. 3rd 311*).

A trial by jury according to the course of the common law as secured by *Article I, Section 3* of the *California Constitution (1849)* is demanded by Plaintiff (see also *Report on the Civil and Common Law 1 Cal 589*).

## STATEMENT OF THE CASE

The case began when Defendant New South Parking Inc., an ostensibly wholly owned subsidiary of Defendant Central Parking Inc. of Nashville, Tennessee, successfully bid to operate the parking concession(s) at SFO in October of 2006.

Plaintiff had worked, ***without incident*** and with considerable distinction in his job as a cashier at the SFO parking garage for ***seventeen*** years. In his various work venues it should be duly noted that Plaintiff, and ***all*** like situated, have ***no access*** to any "***secure***" areas of SFO and, in the case of Plaintiff, neither need nor desire for any such access.

With the successful bid by Defendant(s) as hereinabove mentioned, it was just a matter of time until the management changeover occurred. This process was begun, on a surprisingly delayed basis insofar as Plaintiff was concerned, on or about May 21st, 2007 when all the staff of the previous concessionaire, Ampco Parking Inc., were "notified" that they had to apply for work with Defendants, which relationship would commence on July 1st, 2007. and that meetings would be held the week of May

24th, 2007 to facilitate such process.

Anticipating 'bad karma', Plaintiff made a request to the outgoing concessionaire, Ampco Parking Inc., to have his work record transferred to Defendant(s), but this request was summarily denied without good cause (see *Exhibit "A"*).

Plaintiff was among the first to appear at the first such meeting on May 25th, 2007, accompanied by co-workers Elmer Kamlley, Jim Moran, and Maria Morazon. At this meeting the new general manager of the SFO concession, and agent for Defendants, Eric Loudin, appeared and made a statement to the effect that all who 'wished to come aboard would be welcome' and that it was not 'the intention of Defendant(s) to terminate anyone currently working'.

Plaintiff completed what documents that he could and submitted the same. Not having sufficient notice of this "meeting", Plaintiff was thus not fully prepared to present the issues that form the core of the instant case.

The opportunity to do so was not long in forthcoming: on or about June 15th, 2007, upon arriving for his regular shift at 12:01 AM, Plaintiff learned that there was a memo from Defendant New

South Parking Inc. advising the present staff that there would be a *mandatory* three hour plus meeting, which could be attended at one of several times during the ensuing work week on either June 18th, 19th, or 20th, for the purpose of "orientation" and 'completion of the hiring process'.

In other circumstances, Plaintiff would not even have bothered to appear at such "mandatory" meeting, given that there was, once again, effectively *no notice* whatsoever of such meetings, nor time to make any needed adjustments to the worker's individual schedule, not to mention schedules of family members, to attend such a meeting.

Having, however, the momentous issues now before the courts to present for decision, Plaintiff opted to attend the meeting of June 19th, 2007 at 6:00 PM, again accompanied by co-workers Elmer Kamlley (who sat right next to Plaintiff) and Jim Moran, in what was a likely ill fated attempt to assert rights secured to him, and *all* like situated, by the *Constitution for the united States {1787/1791}*, including the *right to life* and the right to the fruits of his labors.

Such was in fact the case. Plaintiff was asked by staff members of Defendants to complete and sign a W-4 tax form and an I-9 Immigration form.

Plaintiff *never at any time refused to fill out such* forms, but he did request more information about the allegedly applicable laws governing each form and offered legal and documentary evidence (See *Exhibits C,D,E,G,H*), including his *original* birth certificate, that neither the W-4 nor the I-9 forms had any application to him as a lawful de jure jus sanguinis & jus soli free white State Citizen (see also Declaration of Plaintiff in support of Petition, *especially* as to his de jure status). *No info was provided*.

Plaintiff heard no more of the matter until the morning of June 26th, 2007 when he was called into the office of the outgoing concessionaire, Ampco Parking Inc., for a discussion of the matter with Asst. General Manager Joy Riddle, an Ampco management officer with *no* connection (at that time) to Defendants.

Plaintiff was advised by Riddle that if he did not complete and sign the W-4 and I-9 forms that he would be suspended, ostensibly *without* pay (as it has turned out) by Defendants until

such time as he complied with this demand.

Plaintiff again stated that he was *not* refusing to complete and sign such forms but that Defendant, most especially acting as an *agent* for the de facto government, had the same burden of proof, not to mention the duty, to provide the requested information in order that Plaintiff could make a *voluntary, knowing and intelligent* decision as to the applicability of the allegedly relevant laws (see *Exhibit "D"*), most especially in view of the serious and substantive objections and assertions of rights secured by the Constitution that had already been advanced by Plaintiff in support of his various positions.

The status quo thus continued, with Plaintiff reporting for and working on both July 1st and July 2nd, 2007 at his regular shift, just as he had for the past *seventeen* years.

On July 3rd, 2007 at 12:01 AM, however, Plaintiff reported to his venue at Lot DD, 'long term parking garage', only to be advised by supervisor Davy Pamatmat that his time card had been confiscated by Defendants and that he was 'suspended without pay and should go home'.

Plaintiff then made an appearance at the office of Defendant New South Parking Inc. on the singularly appropriate date of July 4th, 2007 and had a 15-20 minute conversation with the new General Manager, Eric Loudin, in which it was determined that Plaintiff's documents would be forwarded to the home office of Defendant Central Parking Inc. in Nashville, and that Plaintiff would make himself available at any time for a phone consultation, likely a conference call, with the corporate legal department, to discuss the issues raised and answer any questions that Defendant might have and that Plaintiff's status of *suspended without pay* would be left unchanged.

Plaintiff, wanting to act in the manifest good faith that has characterized his actions throughout, waited for one week and then, having determined that some supplementary documents might help clear up the matter took the same (See *Exhibit "H"*) to the office of Defendant on the evening of June 10th, 2007, only to discover that his shift had been put up for bid, thus, for all intents and purposes, effecting a change in status from "suspended" to "*terminated*" ! (now Defendants might attempt to argue that Plaintiff was never hired and thus was not terminated, but this would be *a difference without a distinction*, most especially as

Plaintiff worked for the first two days of the incumbency of
Defendant as the concessionaire at SFO and the fact that Plaintiff
was not the 'new kid on the block', having held his position *long
antecedent* to the takeover of Defendant of the SFO parking
concession).

Plaintiff called the next business day, July 11th, and spoke to
Jessica Donlucas, the person in charge of shift activity and other
related matters for the outgoing Ampco Parking Inc. and, evidently,
now for Defendants as well, only to learn from her that the
decision to post Plaintiff's shift for bid had been communicated to
her on *Monday, July 2nd* , with the explanation that 'Plaintiff was
no longer with the company'.

Exercising continuing good faith, Plaintiff waited until July
18th, 2007 -- a full *two weeks* after the initial meeting -- to visit
Defendant's office at SFO and have another conversation with
General Manager Eric Loudin.

While not forthcoming as to Plaintiff's inquiry as to his
current status, and with Plaintiff expressing his disappointment at
having his shift *prematurely* put up for bid, GM Loudin, in an
otherwise friendly and animated conversation, did say that

Plaintiff's documents had in fact been sent to Nashville and that some response could soon be expected.

*After* this meeting, Plaintiff received a demand letter from GM Loudin on behalf of Defendant New South Parking Inc. (see *Exhibit "O"*) stating that he (Plaintiff) had to comply with the Defendant's demand to complete and sign the disputed forms by *July 31st, 2007* or that he 'could not be considered for employment" with the company'.

Plaintiff received a call the next evening from GM Loudin providing him with the name and telephone number of a corporate attorney for Defendant Central Parking Inc., with instructions to call on Friday, July 20th, 2007. Plaintiff did so, but without success, leaving his telephone number for call back purposes.

The call to the corporate legal department of Defendant Central Parking Inc., and their agent Chris Kato, was completed on the morning of July 23rd, 2007 -- a 20 minute conversation that was friendly, but which did nothing to alter or improve Plaintiff's position with Defendant.

Somewhat startling, if not bemusing, was the claim of attorney-client privilege' advanced by Mr. Kato pursuant to the company's reasons for opposing Plaintiff's positions, most especially where, as pointed out by Plaintiff, the company necessarily had to rely on some or another allegedly applicable *public* law(s) to sustain it's actions, which law(s) it *did not cite.*

What Mr. Kato did say, in addition to expressing Defendant's wish that Plaintiff come to work for them, was that the company was afraid of being penalized by some or another (de facto) government agency -- Homeland Security was mentioned here, though Plaintiff does not know what connection, in regard to "national security", could be made on the facts of *this* case.

Plaintiff did request *copies of all written legal authority(ies)* relied upon by Defendant in opposing Plaintiff (which have *yet* to be forthcoming) and pointed out that he (Plaintiff) could see no justification for his suspension or termination by Defendant simply for asserting rights secured to him by the ***Constitution for the united States {1787-1791}***, and *all* like situated, as a lawful de jure free white State Citizen, such as *redress of grievance*, which redress is made impossible by *not knowing* what law(s) are

responsible for the injuries inflicted upon Plaintiff and thus being unable, individually or otherwise as State Citizens, to instruct our representatives to amend or repeal such law(s).

Plaintiff went to the office of Defendant New South Parking Inc. on July 27th, 2007 in pursuance of their demand letter of July 16th, 2007 (see *Exhibit "O"*) in a *good faith effort* to find some common ground before the expiration of their demand date of July 31st, 2007 to complete and sign the W-4 and I-9. Plaintiff spoke with Agnes Wong, the person in charge of human resources at Defendant's SFO office and attempted to comply with their demands, but *did not receive any help* in so doing.

Plaintiff presented, as *evidence of the law* in support of his positions, copies of 42 USC 302(a)(8) and a letter from the Social Security Administration itself *proving* that the application for benefits is *voluntary*; copy of citation from *Van Valkenburg v Brown 43 Cal 43*, an opinion holding that no white person owed their Citizenship to the 14th "amendment"; copy of a citation from *American Law & Procedures (1910) Vol. 13 pp 137-162* on the definition of "person" as connoting an *artificial entity;* copy of 26 USC 3401(c), the definition of *"employee"* (most especially for the purposes of withholding of wages at source of income) clearing

showing that Plaintiff was *NOT* such an "employee"; and a copy of 26 USC 6305 disclosing the otherwise little known fact that the "voluntary" application for social (in)security benefits operates not only as a delegation of *unlimited* power to the Congress levy taxes on such recipients, but to foreclose *any and all judicial redress and relief* that one might otherwise suppose, consistent with the Constitution, to be available for review of such power(s).

At no point in the application process did the national government ever disclose any of the above facts, to Plaintiff, or anyone else he has ever queried about their experiences during such time, thus Plaintiff never made a *voluntary, intelligent*, and *informed* entry in the social (in)security system.

Plaintiff thus made, upon discovering the deception and fraud of the de facto national government relevant to the application process for a social (in)security account number, a lawful rescission for cause of such application sent, via certified mail, to al known affected parties on August 1st, 1988. No response to this rescission has ever been received.

Plaintiff is all too well aware, most especially having received a reply to subsequent correspondence to the Social

(in)security Administration in Rockville, Maryland, that the de facto government believes that since there exists no statutory authority to withdraw from the social (in)security program that no one can so withdraw. The only known case from the supreme Court of the united States *ostensibly* dealing with this subject matter is *Bowen v POSSE 477 US 41*, but on the facts of that case it is *easily* distinguishable from the instant case, thus there is, yet again, *no support* for the *de facto* government's position on this issue.

Despite this showing, coupled with all other documentation as elsewhere noted, Defendants adhered to their position, again *without any support whatsoever*, that Plaintiff had to complete and sign out the W-4 and I-9.

Plaintiff, having also made an *offer of proof* to Defendants as to his identity and status -- his *original* birth certificate -- (and believing that he can establish, in a common law court of general jurisdiction, his identity and status *beyond a reasonable doubt*), as acknowledged by Wong, was willing to comply with the demands of Defendant, if he could have received *sufficient information* on the allegedly applicable law(s) to fill out the W-4 and I-9 forms.

Plaintiff reminds the court that on the facts of the case that he was *not* the newcomer to the situation seeking work from Defendants, which *might* raise different issues, but had been at work at SFO for *seventeen* years in his job without any question of either his *identity or status*, most especially as regards any purported authority to regulate 'illegal immigration', even if such regulation could be construed to be a matter of "national security".

Plaintiff believes that as a lawful de jure State Citizen that applying for a social security account number is a *voluntary* act, that without such social security number Plaintiff cannot obtain either a (California) Driver's License of 'state' ID card (see Sections 12800 et seq. of the California Vehicle Code) such as would serve as his "identification" for the purposes of the I-9 Form, and, that *not* owing his State Citizenship to Section 1 of the 14th "amendment", that he could not apply for a United States Passport, yet another ostensibly satisfactory documentary evidence of his "identification", on account of having to declare, *falsely*, under *penalty of perjury*, that he was a de facto 14th "amendment" 'citizen'. Plaintiff, not being in active military service does not have, cannot obtain, and does not wish to have, any *military* ID.

And just as with the Passport application, Plaintiff could not complete and sign a Voter Registration Form on account of *not* being a United States 'citizen' within the meaning of that term, which definition is solely derived from Section 1 of the 14th "amendment", without waiving his *unpurviewed* 5th Amendment right not to be a witness against himself in a criminal case, thus Plaintiff, and *all* like situated, have been divested of their right to vote, hold elective or appointive office, or participate in any way in the (de facto) government.

Accordingly, without such representation, the (de facto) government cannot, consistent with any provision of the *Constitution for the united States {1787-1791}*, have enacted any lawful authority 'in pursuance of *this* Constitution' (*Article VI, Section 2*) which would require the compliance of Plaintiff asserted by Defendants in the instant case, nor has any such authority been provided by Defendants, even in the face of the continued demands of Plaintiff for any and all such authority.

Plaintiff then instituted, as a matter of his right to redress otf grievance, a petition for Declaratory & Injunctive relief, *Case No. 464802* in the San Mateo County Superior Court and had

*Defendants* duly and *timely* served on July 30th, 2007, *one day prior* to their 'proposed deadline date' for completing and signing the contested W-4 and I-9 government forms.

Plaintiff shortly thereafter sent Defendants a document package, in pursuance of his promise to learn whether or not he could at least apply for a 'California' ID card, which documents demonstrated that he could **NOT** so apply, as the disclosure of an applicant's social (in)security account number was and is a *REQUIREMENT* to obtain such ID (see Exhibit "R").

Included with these documents was a letter from Plaintiff requesting acknowledgment of (a) an extension of time for the completion and signing of the W-4 and I-9 forms and (b) that such extension was in effect via *operation of law* with Plaintiff invoking *his right to seek redress of grievance* in order that he could make a *voluntary, knowing, and intelligent* decision whether or not to complete the disputed forms. No response was ever received.

Plaintiff heard nothing whatever from Defendant(s) until August 28th, 2007, the *day before* the scheduled hearing on the case at which time Plaintiff anticipated receiving a summary default judgment against Defendants which, among other things,

would have restored Plaintiff to his job, when he received a phone call from their "outside" corporate counsel, William Weissman and was advised that Defendants had filed a petition for removal of *Case No. 464802* to the federal district court in San Francisco.

Appearing at the hearing of *Case No. 464802* the next day, with such counsel *conspicuously* absent, the case was moved, over the objection of Plaintiff on the grounds of lack of subject matter jurisdiction of the federal district court -- which Plaintiff was there and then prepared to make an *offer of proof* (see *Exhibit "S"*) to such effect, off calendar until such time, if any, that the case was remanded back to the San Mateo County Court.

In summary, then, Plaintiff was denied his day in court and a summary judgment in the bargain in a properly served and filed case in a State Court by the actions of Defendants, actions that can only be categorized as being in *bad faith, dilatory, and without any foundation in law* and all of this was accomplished *without* Plaintiff ever having an opportunity to be heard as to the merits of the actions of Defendants.

Plaintiff was advised by Presiding Judge Foiles that he would have to 'take the matter up in federal court', which necessitates

an unknown delay in time, with Plaintiff already facing *imminent* homelessness and financial ruin due to being denied the justice that one might suppose that the *Constitution for the united States {1787/1791}*, not to mention the Constitutions of the Several States, were ordained and established to ensure.

Defendants had to be well aware of these facts and, indeed, Plaintiff's tenuous situation might have been their motivation in engaging in *dilatory, frivolous, and bad faith* tactics to attempt to escape the liability for their actions which Plaintiff seeks herein.

Plaintiff thereafter discovered that his name had been *removed* from the Cashier seniority list; he has received no notification of an upcoming shift bid, nor any communication from Defendants at all, let alone with regard to his status & standing and accordingly it must be presumed that at some point in time, with *neither notice nor opportunity to defend*, Plaintiff has been terminated, *constructively*, if not actually, from his job.

Based on the facts to date, Plaintiff believes that his unlawful termination was the goal of Defendants from virtually day one (May 25th, 2006) in their process of taking over the parking concession at SFO and, in any event, from at least the time when

the nature of Plaintiff's objections became known to them.

Defendants, and each of them, have acted contrary to the law, most especially as, assuming arguendo the same to be applicable here, they had a duty, pursuant to *8 USC 1324a*, as set forth in *8 CFR 274a2(b)(1)(i)(A)* to 'ensure' that an individual unable to complete the Form I-9 be given assistance in so doing', and no such assistance was ever offered despite repeated requests by Plaintiff and the clearly demonstrated need for such assistance.

In the alternative, Defendants are acting in the matter of continuing the work relationship with Plaintiff as agents of the *de facto* national government and it can be fairly inferred, most particularly in view of the fact that this same *de facto* national government will assert, with a sense of *alacrity*, its qualified, if not absolute, immunity from suit in the courts of the united States. Accordingly, if Defendants are not accountable for their actions, as outlined herein, *no one is* and Plaintiff is left without a remedy.

Plaintiff was advised by Defendant(s), in the phone call to their agent, Chris Kato, that they were concerned, if not *fearful*, of reprisals and sanctions by the (de facto) government if they failed to comply with its demands to complete the Forms I-9 and W-4, yet satisfactory alternatives, of which they were specifically made

aware of in regard to the W-4 and *which they knew, or should have known* relevant to the I-9 would *easily* have been available and thus no need to have pursued the suspension and/or termination of plaintiff reasonably existed at any time.

In the later case, the primary, if not sole, criminal and, perhaps, civil, penalty which could be imposed by the (de facto) government for an alleged violation of 8 USC 1324a would involve the government having to *prove* that Plaintiff was not only an alien, but an *unauthorized* alien, an impossible task in the instant case as the evidence proves -- if in fact Plaintiff *IS* an alien, in the eyes of the *de facto* government, he certainly cannot be construed to be an *unauthorized* alien and thus the government case would fail for not having proved each and every element of their prima facie case (see e.g. *Morrisette v US 342 US 246, In Re Winship 397 US 358*), as any first year pre-law student would be well aware.

Further, a careful reading of 8 USC 1324a discloses, in section (b)(6)(A), that:

"Except as provided in subparagraphs (B) and [C], a person or entity is considered to have complied with a requirement of this subsection notwithstanding a technical or procedural failure to meet such requirements if there was a

*good faith attempt* to comply with the requirement."

In addition, with only a hearing before an ***administrative*** law judge as the forum in which guilt or innocence is decided and with the government being able to institute the action with a pleading styled a "Notice of Intent to Fine" (a document bearing strikingly familiar likeness of a ***Writ of Praecipe***), a 'respondent's guilt is all but determined prior to the commencement of the "due process" hearing which raises several interesting, if not crucial, points of law in and of itself, even ***WITH*** an ***artificial*** entity as the prey (see ***Hale v Henkel 201 US 43, Calif. Bankers v Schultz 416 US 21***).

Also, a ***good faith*** showing on the part of an "employer" will likely result in no harm inuring to such entity or having any such negative consequences set aside in what passes for "judicial" review -- see e.g. ***Collins Foods v INS 948 Fed 2nd 549***).

The redress of grievance on these issues is especially compelling in view of the decisions of the courts, supreme Court of the united States included, that disclosed the harsh and, in the view of Plaintiff, unlawful, treatment received by perceived " illegal tax protesters" (or should that be "illegal tax" protesters ??!) either ***directing a criminal verdict of guilty*** against such defendants or

sustaining the same in an appellate capacity.

1    *In view of these facts, Plaintiff went to the office of
2 Defendant NSP following the decision on his petition for
3
4 Declaratory & Injunctive relief , to reclaim his position of
5 seventeen years, only to be denied such reinstatement by NSP for
6
7 the alleged reason that Plaintiff had, pursuant to the demand letter
8 of NSP of July 16, 2007, given up his opportunity to be hired by
9 either NSP or CPI.
10
11
12    Plaintiff further contends and believes that the *best* case
13
14 scenario for Defendants is that the 14th "amendment", and any and
15 all acts passed in pursuance thereof, have no application either to
16
17 himself or any lawful de jure State Citizen (see *Exhibits B,C*).
18
19    In the alternative, Plaintiff asserts that the 14th "amendment"
20
21 was never  properly ratified pursuant to *Article V* of the
22 *Constitution* and/or that in any event, as presently construed, that it
23
24 would be violative of, among other provisions, *Article I, Sections*
25 *9 & 10, Article IV, Section 2, Article III, and the 9th and 10th*
26
27 *Amendments* of the *Bill of Rights*.
28

   In addition, the 14th "amendment" neither received the

necessary *two thirds* votes of both houses of Congress to even be proposed, what with all of the Southern States being denied their rightful place in the 39th Congress, nor the *three fourths* vote of the Several States (and Plaintiff believes that this 'amendment' would have required ratification by the *people in conventions consistent with Article V*), with all of eleven the Southern States (of the then 38 (?) States) failing to ratify the amendment (note that these *same* legislatures *had* ratified the 13th Amendment).

The only way in which the 'ratification' of the 14th "amendment" was secured was via the efforts of the provisional *military* governments set up in the Southern States (in *peace* time, long after the declaration of the end of the hostilities and *not* otherwise in time of invasion or rebellion) 'courtesy' of the Reconstruction Act of 1867, a Congressional Act itself unconstitutional which was going to be held to be so by the supreme Court of the united States in the case of *Ex Parte McCardle 7 Wall 506* until Congress passed an '*emergency*' statute removing the appellate jurisdiction of the court in that case.

Plaintiff is also of the opinion that the exercise of *federal regional martial law* rule pursuant to which the social (in)security laws, among many other *regionally* based statutory schemes is,

especially as regards lawful de jure State Citizens, a trespass of jurisdiction and *subordination* of the civil authority to the military power in direct violation of *__Article I, Section 12 of the California Constitution of 1849__*.

Plaintiff has made substantive and meritorious contentions throughout the proceedings with Defendants, (see supporting Declaration of Plaintiff) while they in turn have not produced a *single shred* of legal authority in support of their contentions.

Plaintiff has also proposed solutions, in accordance with known and existent law, the simple implementation of which would have averted all of the consequences complained of herein, yet Defendants chose not to avail themselves of such remedies and allowed themselves thereby to remain "in the middle" so to speak and are now fully liable for the injuries inflicted upon Plaintiff.

Plaintiff alleges that it is against the public policy of the united States, and of California, to be penalized any further for attempting to assert rights secured by the Constitution and most certainly against public policy to be reduced from a producer of wealth to a drain upon the public coffers or, in the alternative, a life of homelessness, despair, and criminal activity to preserve life.

Plaintiff further asserts that Defendants should be held liable for their actions *regardless* of the disposition of the underlying issues which gave rise to the dispute between the parties, as Defendants, *having the duty*, acting as an agent for the *de facto* government, to identify each and every law or regulation (which Plaintiff *repeatedly* demanded) and/or legal implications of completing either the I-9 or the W-4 Forms and disclose all legal authorities sustaining the government's authority to enact such legislation (most especially as against lawful de jure free white State Citizens) and *being in a manifestly superior position to Plaintiff to perform whatever legal research necessary to discharge such duties, should have done so at their first opportunity and thus* the unfortunate situation(s), and ensuing damage to Plaintiff, that have since arisen would never have occurred.

Plaintiff did advise Defendant(s) about all of this, and their potential liability(ies) -- as the *de facto* government cannot, evidently, be sue without its permission -- and further advised Defendants to "get out of the middle" by complying with Plaintiff's timely and well supported demand to continue in his work without the necessity of filling out de facto government Forms which could

not be required of, and had and have no application to, a lawful de jure free white State Citizen.

Defendants were also *well aware* that Plaintiff had no recourse to obtaining any other means of supporting himself, continuing his physical existence, and providing promised assistance to Brittany Pickett, a college student at USF with whom Plaintiff has had a lifelong avuncular relationship, with her college tuition and needs, as the same issues to those present in this case would be used in denying work and/or a position to Plaintiff for the same alleged reasons as Defendants have attempted to use here.

Further, Plaintiff had been, since December 2006, assisting Linda Pickett, mother of Brittany and Ryan (an incapacitated adult child) with financial support while Ms. Pickett attempts to be restored to her job of *twenty four* years from which she was likewise wrongfully terminated.

As a result of the unlawful actions of Defendants against Plaintiff, this assistance has become impossible to provide, with the potential consequence to Brittany Pickett that she will be forced to drop out of USF, with who knows what evils this would engender, and Linda Pickett without the assistance of Plaintiff, is seriously handicapped in providing the necessaries for herself, Ryan, and

Brittany and they, too, might become homeless as well.

# *PRAYER FOR RELIEF*

Plaintiff is thus entitled to the following relief,  to wit:

1. Reinstatement to his job forthwith, including full seniority rights;

2. Compensatory damages in the form of the discharge of the obligations for the time lost from work by Plaintiff as a *direct* result of the unlawful actions of NSP and/or CPI nunc pro tunc  July 1st, 2007 (with calculations based on overtime hours that for which Plaintiff would have been eligible to have worked -- and in all probability would have worked, but for his wrongful suspension and/or termination by NSP and/or CPI and any and all accrued holidays during such period);

3. Compensatory damages for the loss of Plaintiff's home and the *loss*, or *forced* sale of much of his personal property (as listed in accompanying declaration of Plaintiff) with Plaintiff being rendered *homeless* and *unable to support himself* due

to the unlawful actions of NSP and/or CPI;

4. Compensatory and/or exemplary damages for the negligent infliction of emotional distress upon Plaintiff by Defendants, and each of them, via their wrongful acts against Plaintiff in the amount of five million dollars;

5. Compensatory and/or exemplary damages for the destruction of Plaintiff's life by Defendants, and each of them, via their wrongful acts against Plaintiff, most especially their egregious, dilatory, and bad faith acts in the removal of Case No. 464802 to the federal district court and the ensuing delay which resulted in Plaintiff becoming homeless and destitute, and their failure to perform their duty to assist Plaintiff in the hiring process, in the amount of twenty million dollars;

6. Receive job, back pay, etc. win or lose as NSP did *NOT* produce the goods when they had a legitimate demand to do so and duty to so act, thus necessitating the ensuing litigation;

7. Have Respondent(s) discharge, *in perpetuity*, the obligations for any allegedly applicable Union dues owed by Petitioner to Teamsters Local 665 from July 2007 in perpetuity, for the

duration of Plaintiffs work career with Defendants;

In addition, Plaintiff is requesting a Temporary Restraining Order to be restored to his job pendente lite or, in the alternative, be placed on paid administrative leave pendente lite, in either case with the obligations for back pay to be discharged *forthwith* nunc pro tunc July 1st, 2007.

## *JURAT*

I, William Henshall, declare under *penalty of perjury*, that all facts stated herein are true of my own personal knowledge except those matter stated upon information and belief, which are true to the best of my knowledge.

Date: September 5, 2007

William Henshall/Plaintiff
In Propria Persona/Sui Juris

Complaint for Damages Page 32   of 32

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco,  California, USA
650-255-3078

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO


**William Henshall,**                    )
                                         )
                                         )    CASE No. _____
            Plaintiff                    )
                                         )
                                         )
                                         )
        vs.                              )
                                         )    Index of Exhibits
                                         )
Central Parking Inc.                     )
                                         )    to Complaint for Damages
New South Parking Inc.                   )
                                         )
                                         )
Does  1 thru 50                          )
                                         )
            Respondents                  )
                                         )
                                         )
                                         )
_____ )

Exhibit A          Request for Transfer of Records

Exhibit B          Renunciation of Citizenship

Exhibit C          "New Hire" letter to Respondent

Exhibit D          "Meador Indemnification" request

Exhibit E          Birth Certificate of Plaintiff

Exhibit F          Plaintiff's timecard for PPE 7/15/07

Exhibit G          "Ashwander Question" letter to Respondent

Exhibit H          "IRS Ruse" letter to Respondent

Exhibit I          Proposed Affidavit to IRS by Respondent

Exhibit J          "Real ID Act" letter to Tom Lantos

Exhibit K            Omitted

Exhibit L          Letter to Sec. State. Condoleeza Rice

Exhibit M          Plaintiff's Rescission of Social Security

Exhibit N          Declaration of Sister in re ID of plaintiff

Exhibit O          Respondent's demand letter of 7/16/07

Exhibit P          Letter to Speaker Nancy Pelosi

Exhibit Q          Letters to Assemblyman Gene Mullin

Exhibit R            Omitted

Exhibit S          Plaintiff's Motion to Remand Case No. 464802

William Henshall
**First Judicial District**
P. O. Box 281676
San Francisco,  California, USA
650-255-3078

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

**William Henshall,**                          )
                                               )
                                               )        CASE No. _____
            Petitioner                         )
                                               )
                                               )
                                               )
          vs.                                  )        Affidavit of Plaintiff in
                                               )
Central Parking Inc.                           )        support of issuance of
                                               )
New South Parking Inc.                         )        TRO & OSC
                                               )
                                               )
Does  1 thru 50                                )
                                               )
            Respondents                        )
                                               )
                                               )
                                               )
_____    )

I, William Henshall, declare **under penalty of perjury**, that the following facts are true, and that each, individually and cumulatively, support the issuance of ex parte relief requested in the form of a **Temporary Restraining Order** and/or an **Order to Show Cause**, to wit:

1. That I am faced with **imminent** homelessness and destitution if not restored forthwith to my job or placed on administrative paid leave by Defendants forthwith;

2. That Defendants will suffer **no prejudice** by these actions, as they were given **every** opportunity, as set forth in the complaint, to perform the duty which the law mandates in supplying the requested information about the I-9 and W-4 Forms and **utterly** failed to do so;

3. That Plaintiff has been at his job without incident and with considerable distinction for **seventeen** years; Defendants have repeatedly said that they wish Plaintiff could come to work for them, yet they have made it impossible for Plaintiff to do so;

4. Plaintiff is right about the law; two decades of research and study stand behind Plaintiff's pleadings, and no one at any time during this period has ever raised an argument to the contrary;

5. Plaintiff should never have been penalized for attempting to **assert rights secured by the Constitution for the united States {1787-1791}**, as being against the public policy of the united States, and should not continue to be penalized;

seek to use his property in the form of his time and labor;

11. Plaintiff has provided alternatives, even remedies, as set forth
in the complaint, for Defendants to invoke to deter any
negative consequences of their complying with Plaintiff's
requests to continue his job without the necessity of filling
out either an Form I-9 or a Form W-4, thus Defendants
should have had *NO REASON* to terminate Plaintiff and
*EVERY REASON* to proceed as Plaintiff requested;

Date: _September 5_, 2007

_William Henshall_
William Henshall/Plaintiff
In Propria Persona/Sui Juris

# EXHIBIT A

To:    Ampco Parking
       Bob Baker
       Joy Riddle
       Agnes Wong

From:  William Henshall

In Re:  Transference of work record

Date:  May 5th, 2007

Please take notice that if there is in fact a changeover to a new sub-contractor on July 1st, 2007, as now seems likely, that I wish that the *entirety* of my work record to be transferred to such new vendor as the basis for the relationship between us.

Indeed, I have not only *no* reason not to want such work records transferred, but *every* reason to wish it so, most especially regarding issues of *status, standing, jurisdiction & venue* in order that a proper record is set in the first instance on all these critical matters of Constitutional law.

Any ostensibly needed waiver of "privacy" or other concerns can fairly be inferred from the request made in this letter.

Accordingly, please advise in writing as to your assent to this request and upon the completion of such transfer of records.

Constitutionally,

_____

# EXHIBIT B

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco,  California, USA
650-255-3078

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

William Henshall,                          )
                                           )
                                           )    CASE No. 465862
              Plaintiff                    )
                                           )
                                           )
          vs.                              )    Exhibit "B"
                                           )
Central Parking Inc.                       )    Plaintiff's renunciation
                                           )
New South Parking Inc.                     )    of alleged de facto 14th
                                           )
                                           )    "amendment" citizenship
Does  1 thru 50                            )
                                           )
              Respondents                  )
                                           )
                                           )
                                           )
                                           )

Madeline Albright
Secretary of State
united States Department of State
Washington, DC

In Re:   Renunciation of citizenship

Date:  July 31st, 2000


In pursuance of my communication of November 1st, 1999 regarding renunciation of citizenship you have had 8 months to respond to the duly served document and the questions therein raised and have failed to do so thus giving rise to, ***at least***, a rebuttable {if not ***conclusive***} presumption of law that the contentions therein asserted about the matters of ***de jure and de facto*** citizenship are accurate and that the objections therein taken and asserted during many years of government oppression are well founded.

After all it is your office that is ***charged with the Constitutionally mandated duty to resolve  matters of this sort that may, from time to time, come before it for review*** pursuant to, among other Constitutionally secured rights ,the right to ***petition the government for redress of grievance***.

As with all other bureau-rats to whom these grave matters of Constitutional Law have been submitted the same have gone totally unanswered where, it is contended, that a duty exists to not only answer but to do so in substantive terms too clear to admit of doubt, for there is nothing more certain in our Constitutionally ordained Republic than that:

Page 1  of 11

"... governments are instituted among men, deriving their just powers *from the consent of the governed* ..."

*Declaration of Independence 1776*

and it is *this consent*, to be governed in and by, as it were, *a federal regional martial law venue as, via fiction of law, an artificial entity WHOLLY WITHOUT REGARD OR REFERENCE FOR DE JURE STATE COMMON LAW JURISDICTION* that has been sought these many years without success so that such "consent" could be once and for all revoked and nullified.

In accordance with the opinions expressed above the accompanying Declaration of Renunciation of {de facto} "citizenship" is made in favor of my *natural right of Citizenship* as ordained and established by the *Constitution and Laws of the united States {1787/1791}.*

All that remains for this office to do is acknowledge receipt of this Declaration on the form provided and file the same in order that an irrefutable record be made for use in defeating any and all claims based on whatever *fiction of law* that I am any other but a natural de jure State Citizen not subject to jurisdiction(s):

*"foreign to our Constitution and unacknowledged by our laws"*

**Page 2 of 11**

As to the Declaration itself it should be noted that nowhere in the corpus of that instrument is there any acknowledgment by a notary as my studies in this area indicate that such notaries have their origins in the ***Roman civil law*** and there seems to be no basis for their existence in the ***English Common Law***.  Furthermore, being of lawful age and sound mind -- the latter contention being no doubt a matter of scorn for all de facto government bureau-rats who fail to understand the first important principles of the Constitution that they ***swore, under oath***, to uphold, protect and defend -- the Declaration is made and attested to as ***a matter of right*** with appropriate authorities therein noted.

It ***shall be expected***  that, within ***30 days from the receipt of this certified mail correspondence***, that a duly filed copy, dated and stamped, will be in my hands by return mail {addressed to me ***at my address exactly as it appears below***} and that this office will, as it must, acknowledge the soundness of the claims asserted to the ***de jure Citizenry*** of this Nation.


Constitutionally,



_____

William Henshall
***First Judicial District***
P. O. Box 281676
San Francisco, California, USA


ref/Renounce

Page 3  of 11