"Notwithstanding any other provision of law, the *Secretary of Homeland Security* shall have the authority to waive, and shall waive, all laws such Secretary, *in the Secretary's sole discretion*, determines necessary to ensure expeditious construction of the barriers and roads under this section."

and, even worse, *Section 102(c)(2)* of the same Act (citing and amending *Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996*, the *very sort* of power Plaintiff is challenging) which provides in relevant part that:

> *No Judicial Review* -- Notwithstanding any other provision of law, *no court shall have jurisdiction* --

(A)    to hear any cause or claim arising from any action undertaken, or any decisions made, by the *Secretary of Homeland Security* pursuant to paragraph (1); or

(B)    to order compensatory, declaratory, injunctive, equitable, or *any other kind of relief* for damage alleged to arise from any such action or decision."

Other infamous episodes of this type are illustrated, alas, all too well, in the cases of *Yakus v US 321 US 414* and *Lockerty v Phillips 319 US 182* with regard to the "Emergency" courts and the specific enjoining of jurisdiction of any other courts, where these inroads on the Constitution were sustained by the supreme Court.

Yes, these were *wartime* matters during the 2nd World War and might well be appropriate in those unique circumstances, but when one realizes that some of these wartime measures continued for years after the end of the War, certain questions and concerns do arise about the nature and scope of such authority.

Continuing on this important subject, Plaintiff cites the case of ***Burke v Kline Construction 260 US 226*** in which the supreme Court held:

> "The effect of these provisions is not to vest the jurisdiction of the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the original jurisdiction of the supreme Court is derived directly from the Constitution. Every other court created by the general government derives its authority wholly from the authority of Congress. That body may give, withhold, or restrict such jurisdiction *at its discretion*, provided that it not be extended beyond the boundaries fixed by the Constitution. *** The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it *requires* an act of Congress to confer it. *** And the jurisdiction having been conferred may, at the wil of Congress, be taken away in whole or in part; *and if withdrawn without a saving clause all pending cases cognizable when commenced  must fall."*

Now this decision was authored by Justice Sutherland and supported by Justices Van Devanter, McReynolds, and Butler the infamous "*Four Horsemen*" who later valiantly and patriotically opposed the fascist New Deal enactments of FDR and upon whose judgment and honor Plaintiff relies and is particularly appreciative; accordingly if these Justices could entertain the opinion that *Sheldon* and *Cary*, supra were good law, then it *must* be for the reason that they knew that there *were* remedies in the State Courts of the type sought by Plaintiff herein.

Nor has this matter of limiting the jurisdiction of the judicial department of government been overlooked by the Executive branch, most especially the Roosevelt Administration (with FDR being an *admitted admired* of "Il Duce" -- Benito Mussolini, and the *fascist* system he implemented in Italy:

> "Roosevelt continued to explore ways to deal with the Court. A week after the *Butler* decision, he wrote (Attorney General) Cummings "What was the *McCardle* case ...? ( FDR did *NOT* know about this *very* famous decision of the supreme Court on the subject of the *limits on martial law* ??!! -- ed) I am told that the Congress withdrew some act from the jurisdiction of the supreme Court". The Attorney General replied: "The case of *ex parte McCardle* ... is one of the *classic* (!?? --ed) cases to which we refer when considering the possibility of *limiting the jurisdiction* of the Federal Courts. This whole matter has been the subject of *considerable* study in this Department, and, in the view of recent developments, is apt to be *INCREASINGLY IMPORTANT*."

# EXHIBIT 2
# (INCLUDES EXHIBIT TABS 1 – 3)

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco, California, USA
650-255-3078
Plaintiff In Propria Persona

ENDORSED FILED
SAN MATEO COUNTY
SEP 1 0 2007
Clerk of the Superior Court
By M. MARLOWE
DEPUTY CLERK

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

William Henshall,                    )
                                     )
                                     )    CASE No. *465862*
            Petitioner               )
                                     )
                                     )
    vs.                              )    Notice of Hearing Date
                                     )    ORDER TO SHOW CAUSE
Central Parking Inc.                 )
                                     )    Date: OCT 4TH , 2007
New South Parking Inc.               )
                                     )    Time: 9:00 AM
                                     )
Does 1 thru 50                       )    Dept. LM
                                     )
                                     )
            Respondents              )
                                     )
                                     )
                                     )
                                     )
_____)

PLEASE TAKE NOTICE that Plaintiff William Henshall will

proceed with a hearing on his Motion to Show Cause on the

_4 7th_ day of _OCTOBER_, 2007 at _9:00_ o'clock

_AM_ in Department of the San Mateo County Superior Court,

Southern Branch at 400 County Center, Redwood City, California.

Date: _September 10_, 2007

_William Henshall_

William Henshall/Plaintiff
In Propria Persona/Sui Juris

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco,  California, USA
650-255-3078
Plaintiff In Propria Persona

**ENDORSED FILED**
SAN MATEO COUNTY

SEP 1 0 2007

Clerk of the Superior Court
By    M. MARLOWE
DEPUTY CLERK

# IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| **William Henshall,** ) | |
| ) | |
| Petitioner ) | **CASE No.  *465862*** |
| ) | |
| ) | |
| vs. ) | Declaration of Plaintiff in |
| ) | |
| Central Parking Inc. ) | support of issuance of |
| ) | |
| New South Parking Inc. ) | Order to Show Cause |
| ) | |
| ) | |
| Does  1 thru 50 ) | |
| ) | |
| Respondents ) | |
| ) | |
| ) | |
| ) | |

I, William Henshall, declare **under penalty of perjury**, that the following facts are true, and that each, individually and cumulatively, support the issuance of relief requested in the form of an **Order to Show Cause**, to wit:

1. That I am faced with **imminent** homelessness and destitution if not restored **forthwith** to my job or placed on paid administrative leave **pendente lite** by Defendants;

2. That Defendants will suffer **no prejudice** by these actions, as they were given **every** opportunity, as set forth in the complaint, to perform the duty which the law mandates in supplying the requested information about the I-9 and W-4 Forms and **utterly** failed to do so **on any and all occasions**;

3. That Plaintiff has been at his job without incident and with considerable distinction for **seventeen** years; Defendants have repeatedly said that they wish Plaintiff could come to work for them, yet they have made it **impossible** for Plaintiff to do so;

4. Plaintiff is **right** about the law; two decades of research and study stand behind Plaintiff's pleadings, and no one,

*officially* or otherwise, at any time during this period has ever presented an argument to the contrary (and see in this regard accompanying Memorandum of Points & Authorities in support of Defendants Motion to Dismiss Case No. *464802* (Fed. Case. *C07-4458SI*; a more frivolous, irrelevant pleading is difficult to imagine and this effort clearly demonstrates that Plaintiff has the best of the law and the facts in the instant case and is fully entitled, as if there were any question, to assert his rights secured by the ***Constitution for the united States {1787-1791}*** as stated in the complaint herein; on request, Plaintiff will provide an *a cappella analysis* of this pleading);

5.    Plaintiff should never have been penalized for attempting to *assert rights secured by the **Constitution for the united States {1787-1791}***, as being against the public policy of the united States, and should not continue to be penalized;

6.    Plaintiff figures to win the instant case *regardless* of the disposition of the underlying claims, as if somehow Defendants prevail on those claims, they most certainly could have provided the relevant laws and authorities to Plaintiff

upon demand in the *first instance* and avoided having to litigate these claims, thus *no hardship* to Defendants accrues in having the relief, even retroactive relief, granted as prayed (and see (4) above as to the quality of Defendants pleadings);

7.   We may assume that Defendants will, at their *first* opportunity, attempt to remove *this* case to Federal Court as well, with even less of a legal position to argue than in *Case No. 464802,* in an attempt to further deny Plaintiff his rightful *redress of grievance* in the hope that they can exhaust Plaintiff's resources and win on some sort of 'constructive' default (*an all too real possibility*);

8.   The importance of the questions presented is difficult to overstate, affecting as they do, issues of grave concern to every American regarding their relation to government and issues of *original* intent, federalism, unlawful expansion of Commerce Powers, unlawful invocation of *martial law* rule, separation of powers (see <u>*Youngstown Steel v Sawyer 343 US 579*</u>) and the like, thus the court should do everything in its power to see to it that Plaintiff has the *full and fair* opportunity to present his claims secured by the *Constitution* (see e.g. <u>*Cohens v Virginia 6 Wheat 264*</u>);

9.  Given the nature of the issues involved in litigation between the parties, Plaintiff cannot get another job or in any other known way provide for himself, as the *same* issues would necessarily arise in any new setting in which Plaintiff would seek to use his *property* in the form of his time and labor without being subjected to having his life and well being *conscripted* by the *de facto* national government exercising *martial law rule with unfettered discretion* and without any *redress of grievance* or *judicial* remedy to constrain such government within the confines of the *Constitution*;

10. Plaintiff has provided alternatives, even remedies, as set forth in the complaint, for Defendants to invoke to deter any real or perceived negative consequences from the *de facto* government for their complying with Plaintiff's requests to continue his job without the necessity of filling out either an Form I-9 or a Form W-4, thus Defendants should have had *NO REASON* to terminate Plaintiff and *EVERY REASON* to proceed *in accordance with law* as Plaintiff requested;

11.  That Plaintiff cannot, in any event, comply with the
     'requirements' of the I-9 and/or W-4, as set forth in the
     complaint; even were this the case, however, such 'voluntary'
     acquiescence would run the ***grievous risk*** of being used
     against him to deny his "***Ashwander***" standing to sue --
     while there is no definitive known answer to this question,
     one has but to look at the Court's "***Ashwander***" jurisprudence
     to see how very often it is invoked to *evade* ruling on
     questions of the constitutionality of Congressional Acts (see,
     e.g. ***York v Texas 137 US 1, Carmichael v Southern Coal &***
     ***Coke 301  US 495, Millican v US 600 Fed 2nd 273,***
     ***California Bankers v Schultz 416 US 21, Massachusetts v***
     ***Mellon 323 US 447, Bowen v Roy 476 US 693*** )


Date: _September 10_ , 2007


*Counsel for defendants notified by*
*phone 9/17 @ 10:00 AM*

_William Henshall_
William Henshall/Plaintiff
In Propria Persona/Sui Juris


Plaintiff's Declaration in support of OSC Page 6 of 6

William Henshall
**_First Judicial District_**
P. O. Box 281676
San Francisco, California, USA
650-255-3078

ENDORSED FILED
SAN MATEO COUNTY

SEP 1 2 2007

Clerk of the Superior Court
By    M. MARLOWE
DEPUTY CLERK

# IN THE SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| **William Henshall,** | )<br>) |
| | ) **CASE No. _465862_** |
| Plaintiff | )<br>)<br>) |
| | ) |
| vs. | ) Supplementary Declaration |
| | ) |
| Central Parking Inc. | ) of Plaintiff in support of |
| | ) |
| New South Parking Inc. | ) Motion for Order to Show |
| | )<br>) Cause |
| Does  1 thru 50 | )<br>) OCTOBER 4, 2007   DEPT LM |
| | ) 9:00 AM |
| Defendants | )<br>)<br>)<br>) |

COMES NOW Plaintiff William Henshall to make the following supplementary declaration in support of his motion for an order to show cause in the instant case, based on events occurring at the Federal Building in San Francisco on, somewhat ironically and symbolically, *September 11th*, 2007, to wit:

As this court is well aware, Plaintiff filed his original case (No. *464802*) for Declaratory & Injunctive relief in this court, believing it to be a *common law court of general jurisdiction* pursuant to *Article VI* of the *California Constitution (1849)*..

This case was *summarily*, untimely, and inappropriately removed to the Federal District court for the Northern District of California (Case No. *C047 4448SI*) *without any notice and opportunity* for Plaintiff to be heard on the merits of (what turned out to be) Defendants patently frivolous pleadings (See accompanying *Exhibit "1"*, Defendants "Memorandum of Points & Authorities in support of their Motion to Dismiss (!!?)) and in *complete absence* of subject matter jurisdiction.

Defendants filed this removal the *day before* the hearing scheduled in this court on Plaintiff's motion for an Order to Show Cause (just as is now being requested herein) on August 29, 2007.

Supplementary Declaration in support of OSC Page 2 of 8

On the hearing in this court on August 29th, 2007, Defendants not having answered or filed and reply to the complaint, with Plaintiff expecting to move for and obtain a summary default judgment against them, and with Plaintiff offering to make an on the spot, *a cappella,* offer of proof of the absence of such subject matter jurisdiction (see accompanying *Exhibit "2"* -- Plaintiff's Motion to Remand and *Exhibit "3"*, Plaintiff's motion to strike Defendants premature, untimely, and frivolous motion to dismiss), Judge Foiles declined to entertain any such offer of proof by Plaintiff and moved, over the objection of Plaintiff, Case No. 464802 off calendar.

Plaintiff prepared Exhibits "2" and "3" in a timely manner and proceeded, having received notification of Defendants hearing on their purported motion to dismiss on October 19th, 2007, to file the same at the Federal District court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, California at approximately 9:20 AM on September 11th, when he was *refused* admittance to the federal building, let alone the office of the clerk of court, and *threatened with arrest* by a federal marshal simply because he had no identification "cognizable" to the *de facto national* government to present which would "authorize" him to be admitted to the federal building, *exactly the same issue* that is the

subject matter of the instant case and case No. *464802* !

Plaintiff quite naturally *demanded* to know what law, or laws, were being invoked to support the denial of Plaintiff's *right* to redress of grievance, right to judicial process, right to jury trial, and even the right to due process of law, all rights *secured* by the Constitution (or so Plaintiff thought) (and due process of the unpurviewed type it should be duly noted -- see e.g. *Boyd v US 116 US 616*), but the U.S. Marshal did not respond except to say that he *did not know* what Plaintiff was talking about ! !

For this reason, Plaintiff is clearly and unequivocally going to be denied any semblance of due process of law in the Federal District court, let alone the *judicial* relief to which he is entitled as a matter of *right* and which is secured by, among other provisions, *Article I, Sections 9 & 10* (and *Article I, Section 9, Clause 2* in re the prohibition of the suspension of the Writ of Habeas Corpus is becoming *increasingly* relevant here), *Article III, Section 2, Article IV, Section 2*, and the *9th and 10th Articles of Amendment* of the *Constitution for the united States {1787-1791}* .

One does not have to be Nostradamus to foresee that the instant case is destined for the same fate, if the papers haven't already been e-filed by the fat cat attorneys representing the interests of the *corporate artificial* Defendants.

Now the material difference here, and had Plaintiff anticipated any of the *dilatory, bad faith* shenanigans of Defendants, he would have moved for an OSC in the first instance in case *No. 464802*, is that there is a *hearing scheduled* on Plaintiff's Motion for an Order to Show Cause that now takes on even more significance and meaning (if that's possible) than was the case when the moving papers were filed.

With the delays in the federal proceedings engendered by the *absolute destruction* of any right that the Plaintiff might have had to be heard in his own defense, and doesn't this situation do nothing, if not *underscore the soundness* of the arguments proffered in Plaintiffs *Exhibits "2"* and "3" as to the absence of subject matter (and in personam !) jurisdiction in the federal court system, the issuance of the relief prayed for is *essential* and, as stated in the pleadings in the instant case, no hardship or prejudice inures to Defendants, or can be complained of, on the facts of the instant case.

Plaintiff contends for all of this and more. And Plaintiff even agrees with being barred from the courthouse door, as, in effect, he *IS* an 'alien' from the perspective of the *de facto national* government and has been made so by the *war* enactments of Congress complained of in the first instance.

And if this be true, then there can be no remedy for Plaintiff, or *anyone like situated*, in the federal system which makes perfect sense from the perspective of the usurpers -- that they could create their own *de facto federal citizenry* and, as the *creators*, do with them as they pleased, lock, stock, and barrel (and if the court read carefully Plaintiff's Exhibit "2", considerable evidence in support of the destruction of the States will be duly noted).

In short, Plaintiff has no business with the *de facto national* government, nor they with him, most especially as Plaintiff cannot fill out and complete a (California) voter registration form owing to having to make a declaration, *under penalty of perjury*, that he is a "United States citizenship", a statement that Plaintiff *knows* to be false, *can prove it*, and would have *no defense* to any charge of perjury that should be brought because of such false statement.

Thus Plaintiff is barred, *not by any action of his own*, but by the acts of the de facto national government, from participation in government at any level and in any way (but see, contra *Resolve 4 of the Declaration of Rights (1774)*:

> "That the foundation of *English* (not, notably, Asian or African -- ed) liberty, and of all free government, is a *right in the people* to participate in their legislative council ..."

Plaintiff fully realizes that by the time of the hearing on October 4th, that this case might also have been removed to "Oz" (the *de facto* federal court system), but contends that with a *pre-existing* judicial hearing scheduled, he is entitled to be heard on the motion for an OSC and the relief requested, for Plaintiff in the absence of such relief, will become *homeless almost immediately* and be left *without the means to prosecute the instant case*, let alone have the means to provide for his *continued survival.*

Plaintiff reminds the court that its judicial officers are sworn to preserve, protect, and defend the Constitution. This likely will involve issuing an order for the relief prayed in the face of yet another removal *attempt* by Defendants, but as a *clear* case can be made for the lack of jurisdiction in the federal court, any such

attempt to invoke such jurisdiction, and the ostensible statutory authority cited in support, could *not*, on the facts of the instant case, be said to be laws enacted in pursuance of *this* Constitution (*Article VI, Section 2*), thus simultaneously permitting, in the absence of any legal estoppel, Plaintiff to exercise his rights, as aforementioned, California, one of the Several States, to exercise its sovereign powers, just as the framers of the Constitution intended (see especially the *10th Article* of *Amendment* and arguments made on pages 15-17, 21-22, and 25-27 of *Exhibit "2"*), and this court to issue the relief as prayed in the interests of justice (if for no other reason).

Plaintiff declares, under *penalty of perjury*, that all facts stated herein are true of his own personal knowledge.


_William Henshall_

William Henshall/Plaintiff
In Propria Persona/Sui Juris

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco, California, USA
650-255-3078

# IN THE SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN MATEO

| | | |
|---|---|---|
| **William Henshall,** | ) | |
| | ) | |
| | ) | CASE No.  465862 |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| vs. | ) | Exhibit "1" |
| | ) | |
| Central Parking Inc. | ) | in support of Plaintiff's |
| | ) | |
| New South Parking Inc. | ) | Order to Show cause |
| | ) | |
| | ) | Defendants Memorandum |
| Does  1 thru 50 | ) | |
| | ) | of Points & Authorities |
| Respondents | ) | |
| | ) | in support of motion to |
| | ) | |
| | ) | dismiss Federal Case |
| | ) | |
| | ) | No. *C047 4448SI* |
| | ) | |

1   ARTHUR M. EIDELHOCH, Bar No. 168096
    WILLIAM HAYS WEISSMAN Bar No. 178976
2   LITTLER MENDELSON
    A Professional Corporation
3   650 California Street, 20th Floor
    San Francisco, CA  94108.2693
4   Telephone:    415.433.1940
    Facsimile:    415.399.8490
5
    Attorneys for Defendants
6   CENTRAL PARKING SYSTEMS, INC.;
    NEW SOUTH PARKING, INC.
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  WILLIAM HENSHALL,                    Case No.  C07-4458SI

12              Plaintiff,               **DEFENDANTS' MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
13       v.                              SUPPORT OF DEFENDANTS' MOTION
                                         TO DISMISS PURSUANT TO RULE 12 OF
14  CENTRAL PARKING, INC.; NEW           THE FEDERAL RULES OF CIVIL
    SOUTH PARKING, INC.,                 PROCEDURE**
15
              Defendants.               Date: October 19, 2007
16                                       Time: 9:00 a.m.

17

18

19  I.     **STATEMENT OF FACTS**

20         Plaintiff has never been an employee of Defendants.  He declined to provide pre-employment

21  information as required by the Internal Revenue Code (Title 26 of the United States Code) and the

22  Aliens and Nationality Code (Title 8 of the United States Code) and their concomitant regulations.

23         Plaintiff's self-styled "Petition for Declaratory and Injunctive Relief" (Complaint)

24  improperly seeks to allow Plaintiff to operate outside the laws of the United States based on his

25  declaration that he is not a citizen of the United States, and further, to require that Defendants ignore

26  their obligations under federal tax and immigration law, thereby putting their operations at risk of

27  federal penalties and other sanctions.

28  //

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT          Case No.: C07-4458SI
TO RULE 12

1    However well-intentioned Plaintiff may be, he simply does not state a claim upon which

2    relief can be granted.  His Complaint does not state any particular cause of action and is too

3    indefinite to allow for a proper reply.  Therefore, Defendants move to dismiss the Complaint in its

4    entirety.

5    **II.    ARGUMENT**

6    **A.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF**
     **CAN BE GRANTED (FED. R. CIV. PROC. 12(b)(6))**
7

8    The Complaint does not set forth any cognizable cause of action.  Plaintiff seeks a

9    declaration that he is a "lawful de jure jus sanguinis & jus soli free white State Citizen," rather than a

10   citizen of the United States within the meaning of Article 1 of the Fourteenth Amendment to the

11   United States Constitution.  On that basis Plaintiff asserts that he is not subject to federal laws

12   requiring him to provide to Defendants a social security number, Internal Revenue Service (IRS)

13   Form W-4 or Department of Homeland Security (DHS) Form I-9 for purposes of employment.

14                    **1.    The Fourteenth Amendment clearly establishes that Plaintiff is a citizen**
                            **of the United States and therefore subject to its laws.**
15

16   Plaintiff contends that he is not a citizen of the United States within the meaning of Article 1

17   of the Fourteenth Amendment to the United States Constitution, which states in pertinent part that

18   "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are

19   citizens of the United States and of the State wherein they reside."  Thus, contrary to Plaintiff's

20   contention, Article 1 of the Fourteenth Amendment establishes simultaneous state and federal

21   citizenship.

22   In the alternative, Plaintiff contends that the Fourteenth Amendment was never properly

23   ratified and therefore does not apply to him.  (Complaint, pp. 15-16.)  This argument also fails.  In a

24   case that ultimately dealt with the ratification of the Child Labor Amendment to the United States

25   Constitution, the United States Supreme Court, by way of example, discussed the ratification of the

26   Fourteenth Amendment.  The Supreme Court stated that whether the Fourteenth Amendment was

27   properly ratified was a political question and hence was not subject to judicial determination.

28   *Coleman v. Miller*, 307 U.S. 433, 450 (1939).

2.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12

Case No.: C07-4458SI

1    Because the ratification of a constitutional amendment is a political question, the Secretary of

2    State's certification that the required number of states have ratified an amendment is binding on the

3    courts. See *Leser v. Garnett*, 258 U.S. 130, 137 (1922) (Secretary of State's certification that the

4    Nineteenth Amendment had been ratified by the requisite number of state legislatures was

5    conclusive upon the courts); *United States v. Stahl*, 792 F.2d 1438, 1439 (9th Cir. 1986), *cert.*

6    *denied*, 479 U.S. 1036 (1987) (Secretary of State's certification that the Sixteenth Amendment was

7    properly ratified was conclusive upon the courts).

8         In the case of the Fourteenth Amendment, Secretary of State William J. Seward certified that

9    the required number of states ratified the Amendment on July 28, 1868. 15 Stat. 708 (1867-69).

10   Thus, the Court is bound by the certification and must conclusively treat the Fourteenth Amendment

11   as having been properly ratified. Plaintiff's argument, generously construed, that there was fraud in

12   the ratification process does not alter that conclusion. *Stahl*, 702 F.2d at 1440.

13               **2.    Claims by individuals that they are not citizens of the United States**
                        **subject to its laws have been routinely dismissed by the courts.**
14

15        Claims by individuals that they are not citizens of the United States but are solely citizens of

16   a sovereign state or not otherwise subject to federal law have been uniformly rejected by the courts,

17   most notably in the area of federal taxation. *See, e.g., O'Driscoll v. I.R.S.*, 1991 U.S. Dist. LEXIS

18   9829, at *5-6 (E.D. Pa. 1991) ("despite [taxpayer's] linguistic gymnastics, he is a citizen of both the

19   United States and Pennsylvania, and liable for federal taxes"); *United States v. Sloan*, 939 F.2d 499,

20   500 (7th Cir. 1991), *cert. denied*, 502 U.S. 1060, reh'g denied, 503 U.S. 953 (1992) (affirming a tax

21   evasion conviction and rejecting taxpayer's argument that the federal tax laws did not apply to him

22   because he was a "freeborn, natural individual, a citizen of the State of Indiana, and a 'master' - not

23   'servant' - of his government"); *United States v. Ward*, 833 F.2d 1538, 1539 (11th Cir. 1987), *cert.*

24   *denied*, 485 U.S. 1022 (1988) (rejecting Ward's contention that he was not an "individual" located

25   within the jurisdiction of the United States as "utterly without merit" and affirming his conviction

26   for tax evasion); *United States v. Sileven*, 985 F.2d 962 (8th Cir. 1993) (rejecting the argument that

27   the district court lacked jurisdiction because the taxpayer was not a federal citizen as "plainly

28   frivolous"); *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting the Gerads'

3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12                                                      Case No.: C07-4458SI

1    contention that they were "not citizens of the United States, but rather 'Free Citizens of the Republic

2    of Minnesota' and, consequently, not subject to taxation" and imposing sanctions "for bringing this

3    frivolous appeal based on discredited, tax-protestor arguments"); *Solomon v. Commissioner*, T.C.

4    Memo. 1993-509, 66 T.C.M. (CCH) 1201, 1202-03 (1993) (rejecting Solomon's argument that as an

5    Illinois resident his income was from outside the United States, stating "[he] attempts to argue an

6    absurd proposition, essentially that the State of Illinois is not part of the United States. His hope is

7    that he will find some semantic technicality which will render him exempt from Federal income tax,

8    which applies generally to all U.S. citizens and residents. [His] arguments are no more than stale tax

9    protester contentions long dismissed summarily by this Court and all other courts which have heard

10   such contentions."); *Brown v. United States*, 35 Fed. Cl. 258, 269 (1996); *United States v. Studley*,

11   783 F.2d 934, 937 (9th Cir. 1986) ("Studley contends that she is not a 'taxpayer' because she is an

12   absolute, freeborn and natural individual. This argument is frivolous.").

13           **3.      Federal law requires a prospective employee to provide a W-4 to his or
                       her prospective employer.**

14

15           Plaintiff contends that an IRS Form W-4 is voluntary. (Complaint, p. 18.) To the contrary,

16   the Internal Revenue Code (IRC) expressly provides that "on or before the date of commencement of

17   employment with an employer, the employee *shall* furnish the employer with a signed withholding

18   exemption certificate relating to the number of withholding exemptions which he claims, which shall

19   in no event exceed the number to which he is entitled." IRC § 3402(f)(2)(a) (emphasis added). Such

20   withholding exemption certificate is commonly referred to as an IRS Form W-4. A completed IRS

21   W-4 *must* include the employee's Social Security Number. Treas. Reg. § 31.3402(f)(2)-1(d) (every

22   individual "*shall* include such number on any withholding exemption certificate filed with an

23   employer.") (emphasis added).

24           Thus, contrary to Plaintiff's contention that an IRS Form W-4 is voluntary, it is in fact

25   required, and it must include the Plaintiff's social security number. See *Stonecipher v. Bray*, 653

26   F.2d 398, 401 (9th Cir. 1981) ("Treasury Regulation s 31.3402(f)(2)-1 (1979) requires an employee

27   to file a W-4 with the employer upon commencement of employment.").

28   //

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
an Francisco, CA 94108 2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT          Case No.: C07-4458SI
TO RULE 12

1        **4.**    **Plaintiff Has No Fifth Amendment Privilege That Allows Him To Refuse**
2                 **To Supply The Required Information.**

3        Plaintiff contends that the United States Constitution's Fifth Amendment privilege against

4    self-incrimination protects him from providing the required information. (Complaint, p. 14.)  This

5    argument has likewise been repeatedly rejected by the courts.  While the argument most often arises

6    in the context of an individual's refusal to file an income tax return or provide information on an

7    income tax return, the law and rationale are equally applicable to a refusal to provide the information

8    required on an IRS Form W-4 or DHS Form I-9.  *See, e.g., United States v. Sullivan,* 274 U.S. 259,

9    264 (1927) (stating that the taxpayer "could not draw a conjurer's circle around the whole matter by

10   his own declaration that to write any word upon the government blank would bring him into danger

11   of the law"); *United States v. Schiff,* 612 F.2d 73, 83 (2d Cir. 1979) ("[T]he Fifth Amendment

12   privilege does not immunize all witnesses from testifying.  Only those who assert as to each

13   particular question that the answer to that question would tend to incriminate them are protected . . .

14   [T]he questions in the income tax return are neutral on their face . . . [h]ence privilege may not be

15   claimed against all disclosure on an income tax return."); *United States v. Brown,* 600 F.2d 248, 252

16   (10th Cir. 1979); *United States v. Neff,* 615 F.2d 1235, 1241 (9th Cir.); *cert. denied,* 447 U.S. 925

17   (1980); *United States v. Daly,* 481 F.2d 28, 30 (8th Cir.), *cert. denied,* 414 U.S. 1064 (1973); *Sochia*

18   *v. Commissioner,* 23 F.3d 941 (5th Cir. 1994), *cert. denied,* 513 U.S. 1153 (1995).

19

20       **5.**    **Plaintiff's claim that he is not an "employee" subject to taxes has been**
                  **repeatedly rejected by the courts.**

21

22       Plaintiff contends that he is not an "employee" within the meaning of the IRC and therefore

23   its requirements do not apply to him.  (Complaint, pp. 12, 18.)  Plaintiff's argument is contrary to the

24   plain language of the IRC and has been repeatedly rejected by the courts.  *See, e.g., United States v.*

25   *Latham,* 754 F.2d 747, 750 (7th Cir. 1985) (calling the instructions Latham wanted given to the jury

26   "inane," the court said, "[the] instruction which indicated that under 26 U.S.C. § 3401(c) the

27   category of 'employee' does not include privately employed wage earners is a preposterous reading

28   of the statute.  It is obvious within the context of [the law] the word 'includes' is a term of

                                                     5.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12

Case No.: C07-4458SI

1  enlargement not of limitation, and the reference to certain entities or categories is not intended to

2  exclude all others."); *Sullivan v. United States*, 788 F.2d 813, 815 (1st Cir. 1986) (rejecting

3  Sullivan's attempt to recover a civil penalty for filing a frivolous return, stating "to the extent [he]

4  argues that he received no 'wages' . . . because he was not an 'employee' within the meaning of 26

5  U.S.C. § 3401(c), that contention is meritless. . . . The statute does not purport to limit withholding

6  to the persons listed therein."); *Peth v. Breitzmann*, 611 F. Supp. 50, 53 (E.D. Wis. 1985); *Pabon v.*

7  *Commissioner*, T.C. Memo. 1994-476, 68 T.C.M. (CCH) 813, 816 (1994) (rejecting taxpayer's

8  argument that she was not subject to tax because she was not an employee of the federal or state

9  governments as "nothing but tax protester rhetoric and legalistic gibberish.").

10  **6.    Plaintiff has a legal obligation to complete a DHS Form I-9 prior to**
11  **commencing employment.**

12  Plaintiff argues that completing a DHS Form I-9 is voluntary. (Complaint, at p. 19). To the

13  contrary, federal law requires Plaintiff to complete Section 1 of DHS Form I-9 on or before the first

14  day of *hire*, defined as "the actual commencement of employment for wages or other remuneration."

15  8 C.F.R. § 274.1(c).

16  **7.    Defendants have affirmative legal obligations to obtain information from**
17  **Plaintiff prior to the commencement of employment.**

18  Federal law places requirements upon employers that are separate and distinct from those

19  placed upon employees and prospective employees. Specifically, the IRC requires an employer to

20  withhold income taxes, Social Security taxes and Medicare taxes from all "wages" paid at the time

21  of payment, and holds an employer liable for its failure to do so. *E.g.*, IRC §§ 3102(a), 6672; Treas.

22  Reg. § 31.3101-3. An employer does so by collecting a W-4 from the *employee that contains his or*

23  her social security number. An employer is indemnified by the IRC against claims made by an

24  employee for withholding and remitting employment taxes to the government. IRC § 3403.

25  Similarly, employers are obligated to complete Section 2 of the DHS Form I-9 within three

26  business days of hire and attest, under penalty of perjury, that it has examined original

27  documentation presented by the employee, that such documentation "appears on its face to be

28  genuine" and relates to the named individual, and that to the best of the employer's knowledge the

6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12                                      Case No.: C07-4458SI

1    employee is authorized to work in the United States.

2           Plaintiff in effect seeks to have Defendants violate their own legal obligations on Plaintiff's

3    behalf by ignoring applicable provisions of federal law.  This Court should not require Defendants to

4    violate the law to aid and abet Plaintiff in his violation of federal law.  See *Yisrael v. Per Scholas,*

5    *Inc.,* 93 A.F.T.R.2d 2004-1708  (S.D.N.Y. 2004) (because providing a social security number is

6    required by federal law, the defendant/employer could not be placed in the position of being exposed

7    to criminal charges for complying with those legal requirements in order to accommodate plaintiff's

8    religious belief that he is not obligated to pay income taxes.).

9           **8.       Plaintiff has no constitutional right to employment with Defendants.**

10           Plaintiff's prayer for relief appears to assert that he has a right to private employment with

11   Defendants.   Such contention has been rejected by the United States Supreme Court.   *Board of*

12   *Regents v. Roth,* 408 U.S. 564, 578 (1972).

13           In addition, the courts have repeatedly upheld an employer's right to terminate an employee

14   or otherwise not hire a prospective employee that refuses to provide a social security number or such

15   other information that is required by an IRS Form W-4 or DHS Form I-9.  *See, e.g., Cassano v.*

16   *Carb,* 436 F.3d 74 (2d Cir. 2006) (rejecting equal protection claim because "defendants' policy of

17   requiring SSNs applied equally to all employees and was also a necessary consequence of

18   defendants' obligations under federal law."); *Seaworth v. Pearson,* 203 F.3d 1056, 1057-58 (8th Cir.

19   2000); *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 830-31 (9th Cir.1999); *Yisrael v.*

20   *Per Scholas, Inc.,* 93 A.F.T.R.2d 2004-1708 (S.D.N.Y. 2004).

21           Therefore, Defendants' are permitted as a matter of law, if not required, to decline to offer

22   Plaintiff private employment based on his refusal to provide a social security number or complete an

23   IRS Form W-4 and DHS Form I-9.  As such, the Complaint fails to state any cause of action on

24   which relief can be granted.

25          **B.       IN THE ALTERNATIVE, THE COMPLAINT IS VAGUE AND REQUIRES A**
            **MORE DEFINITE STATEMENT (FED. R. CIV. PROC. 12(e))**
26

27           In the alternative, Defendants move for an order requiring a more definite statement because

28   the Complaint is "is so vague or ambiguous that [Defendants] cannot reasonably be required to

7.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940
DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12                                                                Case No.: C07-4458SI

1    frame a responsive pleading, . . . ." Fed. R. Civ. Proc. 12(e). Here, the Complaint is indefinite as

2    follows:

3       1.    Plaintiff asserts that he requested additional information regarding the lawfulness of

4    IRS Form W-4 and DHS Form I-9 from Defendants. He fails to state what additional information he

5    requested or should be provided, nor does he state what legal obligation Defendants had to provide

6    such information or under what law or theory he was entitled to such information.

7       2.    Plaintiff fails to allege any facts indicating he was ever an employee of Defendants or

8    that Defendants owed him any legal obligation to employ him or that would require Defendants to

9    hire him and pay him back wages for a period of time prior to any employment.

10      3.    The Complaint fails to comply with Federal Rule of Civil Procedure 10(b) in that

11   there are no numbered paragraphs.

12      4.    The Complaint fails to comply with Federal Rules of Civil Procedure 8(a) and 8(e) in

13   that there is no short, concise and direct statement of the grounds upon which the court's jurisdiction

14   rests and no short, concise and direct statement of the claims showing entitlement to relief.

15   ## C.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

16

17      This case presents no new claims or issues that the courts have not seen and summarily

18   dismissed many times already. Plaintiff's Complaint should be dismissed without leave to amend

19   because it is not possible for him to state a claim upon which relief can be granted. Specifically,

20   Plaintiff's Complaint is predicated upon the notion that he can be declared a "free white State

21   Citizen" beyond the reach of the laws of the United States and, therefore, that he should not be

22   required to provide certain information which federal law requires as a pre-condition to employment.

23   Moreover, Plaintiff improperly seeks an Order which would require Defendants to disregard their

24   pre-employment, legal obligations. No amendment to the Complaint can allow for any cognizable

25   claim to such status.

26      Further, he has no entitlement to private employment from Defendants, and cannot state a

27   basis on which he could be entitled to such employment. Thus, no amendment to the Complaint

28   could establish Plaintiff's right to private employment with Defendants.

8.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12                                           Case No.: C07-4458SI

EXHIBIT 1

1   **III.   CONCLUSION**

2        This matter is unremarkable in that most or all of Plaintiff's arguments have been previously

3   raised by traditional "tax protestors" and universally rejected by the courts.   Both Plaintiff and

4   Defendants are subject to the federal laws at issue here.

5        Further, because Plaintiff cannot be declared a "free white State Citizen" who is not subject

6   to the laws of the United States, which is the sole basis for his Complaint, and Plaintiff otherwise has

7   no right to private employment with Defendants, and thus cannot state any basis upon which relief

8   can be granted, Plaintiff's Complaint should be dismissed without leave to amend.

9

10

11  Dated: August 31, 2007

12                                          _Arthur M. Eidelhoch_

13                                          _____
                                            ARTHUR M. EIDELHOCH
                                            LITTLER MENDELSON
14                                          A Professional Corporation
                                            Attorneys for Defendants CENTRAL
15                                          PARKING SYSTEMS, INC.; NEW SOUTH
                                            PARKING, INC.

16

17
    Firmwide:83000516.2 024404.1041
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MEM. P&A IN SUPPORT OF DEFS' MOTION PURSUANT
TO RULE 12                                                  Case No.: C07-4458SI

William Henshall
***First Judicial District***
P. O. Box 281676
San Francisco, California, USA
650-255-3078

# IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

**William Henshall,**                    )

)

)            **CASE No. 465862**

          Plaintiff              )

)

)

          vs.                    )            Exhibit "2"

)

Central Parking Inc.             )            in support of Plaintiff's

)

New South Parking Inc.           )            Order to Show cause:

)

)            Plaintiff's Motion to

Does  1 thru 50                  )

)            Remand Case No. 464802

          Respondents            )

)

)

)

)

)

_____)

William Henshall
*First Judicial District*
P. O. Box 281676
San Francisco, California, USA
650-255-3078

Plaintiff In Propria Persona/Sui Juris

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **William Henshall,** | ) | |
| | ) | |
| | ) | **CASE No.** C 047 4448 |
| Petitioner | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | Motion to Remand |
| | ) | |
| Central Parking Inc. | ) | |
| | ) | 28 USC 1447 |
| New South Parking Inc. | ) | |
| | ) | |
| | ) | *(Case No. 464802* in the |
| Does 1 thru 50 | ) | |
| | ) | San Mateo County Superior |
| Respondents | ) | |
| | ) | Court) |
| | ) | |
| | ) | |

Motion to Remand Page 1 of 32

COMES NOW Plaintiff William Henshall, a lawful de jure jus sanguinis and jus soli free white Citizen of California (see accompanying declaration of Plaintiff in support thereof), appearing *specially* and not generally, to move the court to remand the instant case back to the San Mateo County Superior Court due to *lack of subject matter jurisdiction* of this court, as will hereinafter appear.

The absence of subject matter jurisdiction is placed, in whole or in part, on the following points:

1.    That the matter of Plaintiff's status & standing as a lawful de jure free white State Citizen has **NOTHING** to do with federal law as Plaintiff is neither subject to Congress' powers over immigration & naturalization, nor does he *'owe'* his Citizenship to Section 1 of the 14th "amendment", thus the proper forum would be the State Court of general common law jurisdiction from which *Case No. 464802* was improperly and improvidently removed;

2.    That even if assuming arguendo that federal questions arose in Case No. 464802 following the determination of Plaintiff's status & standing, most especially if his claims to lawful de

jure State Citizenship were sustained therein, yet, the State Court would yet retain at least concurrent jurisdiction to decide such issues in the first instance;

3. That as a lawful de jure free white State Citizen Plaintiff would then possess a class of Citizenship *superior* to that of the *de facto* federal citizenship possessed by Defendant *Corporations* (if they are citizens) courtesy of the 14th "Amendment", even if the constitutionality of such "amendment" was ultimately sustained in the supreme Court of the united States, thus Plaintiff's *right* to have the validity of his claims resolved in the judicial department of government supersede any *privilege* which might be possessed by Defendants to have their claims heard in any other forum;

4. That the concept of removal of cases of the type present in the instant litigation was not even legislated until 1914 and then in response to, and recognition of, the large body of *de facto* federal citizens whose presence ostensibly expanded the 'need' for federal jurisdiction for those subject to the jurisdiction of the United States;

5.    That even if the district court is an *Article III Court*, there is no assurance that it either has the jurisdiction to hear and decide the claims presented in the instant case or that if it has such jurisdiction, the same will not be *removed* by Congress (see *Ex Parte McCardle 7 Wall 506*);

6.    That this court lacks the proper venue to proceed; though nominally, and deceptively, designated by Congress as sitting in the Northern District of California, and while geographically being thus located, this is the only sense in which the assignment is true, as there are in existence *NONE* of the Several States which would be recognized and embraced by founders of the Nation & Republic and/or the framers of the *Constitution of the united States {1787-1791}*, as will hereinafter appear, and the shells of the States that remain are nothing but *provisional federal territories*;

7.    That to have claims of rights secured by the Constitution heard and decided in any other than a judicial forum, and with the manifest uncertainty of whether the district courts have, or would retain, the judicial power of the united States, any statute or regulation that would purport to require submitting the claims of violations of such rights to so

tenuous a   procedure would be a violation of either *__Article I,__*
*__Section 9__*   and/or *__Article I, Section 10__* of the *__Constitution__*
*__for the united States {1787-1791},__* which prohibit the
enactment of Bills of Attainder, or, in their lesser form, Bills
of Pains & Penalties.


Plaintiff cites *28 USC 1447* as the nominal statutory grounds
for making the motion, but believes, not unlike the reasoning of the
supreme Court in the case of *__Bivens vs. Six Unknown FBI Agents__*
*__403 US 388__*  that there likely exists *independent* Constitutional
grounds, most especially pursuant to the 9th & 10th Articles of the
Bill of Rights, which would support such action, in addition to the
equitable grounds and the manifest interest of justice in deciding
questions of grave Constitutional significance that have arisen in
the instant case in the *proper* jurisdiction & venue.


Plaintiff, *__with his life on the line,__* devoted much time and
effort in making the decision as to the correct jurisdiction & venue
in which to state his claims, with *particular* attention to whether or
not his case would be heard in a common law court exercising
either the judicial Power of the united States and/or the judicial
Power of one of the Several States.

Well worth noting here is that Plaintiff, having been unlawfully divested of his job of *seventeen* years without *ANY* cause, let alone "just cause", is now facing *imminent* homelessness and destitution, but realized fully from day one of the announced takeover of the parking concession at SFO by Defendants that the legal and factual situation presented as to the continuation of his job would satisfy *each and every one* of the seven prongs of the "*Ashwander*" test for status & standing to raise issues of de jure Constitutional law, as set forth by the supreme Court of the united States in the case of *Ashwander v TVA 297 US 288,341*.

Plaintiff thus made the decision, consistent with his duty as a member of "Our Posterity" as set forth in the *Preamble to the Constitution* and as a State Citizen as *recognized* in *Article IV, Section 2* thereof, that, in effect, with the knowledge acquired over years of study of the Constitution, placing his life *directly in jeopardy* in order to challenge the rampant, runaway exercise of *federal regional martial law* over the Several States begun in 1867 and dramatically advanced during the years of the Roosevelt Regency, was worth whatever consequences that ensued.

Being of the opinion that the federal district courts were no longer *judicial* courts pursuant to *__Article III, Section 1 of the Constitution for the united States {1787/1791}__*, having been reduced, despite outward appearances, to *tribunals* exercising power in conformity with *__Article I, Section 8, Clause 17__* and/or *__Article IV, Section 3 of the Constitution__* and, effectually, being 'created' pursuant to *__Article I, Section 8, Clause 9__* of that august Document, Plaintiff thus filed his case in what he earnestly hoped and believed was a State Court of common law jurisdiction in pursuance of *__Article VI of the California Constitution (1849)__*.

It must be admitted that Congress might have vested *some* of the judicial Power of the united States in the District Courts, which for all intents and purposes, it does *NOT* have any constitutional obligation to do (see e.g. *__Cary v Curtis 3 Howard 256, Sheldon v Sill 8 Howard 441__* -- but see, contra, the correct decision written by *Justice Story* in *__Martin v Hunter's Lessee 1 Wheat 304; Elliott v Swartwout 10 Peters 137,__* and Story's compelling dissent in *Cary*, supra), but if it has done so, it has also displayed a troubling habit of *limiting or removing the jurisdiction* of the Courts of the united States to hear and decide challenges to statutory schemes it enacts -- see e.g. 26 USC 6305, 26 USC 7421, and Section 102 of the Real ID Act of 2005, which provides, in relevant part that:

"Notwithstanding any other provision of law, the *Secretary of Homeland Security* shall have the authority to waive, and shall waive, all laws such Secretary, *in the Secretary's sole discretion*, determines necessary to ensure expeditious construction of the barriers and roads under this section."

and, even worse, *Section 102(c)(2)* of the same Act (citing and amending *Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996*, the *very sort* of power Plaintiff is challenging) which provides in relevant part that:

*No Judicial Review* -- Notwithstanding any other provision of law, *no court shall have jurisdiction* --

(A)    to hear any cause or claim arising from any action undertaken, or any decisions made, by the *Secretary of Homeland Security* pursuant to paragraph (1); or

(B)    to order compensatory, declaratory, injunctive, equitable, or *any other kind of relief* for damage alleged to arise from any such action or decision."

Other infamous episodes of this type are illustrated, alas, all too well, in the cases of *Yakus v US 321 US 414* and *Lockerty v Phillips 319 US 182* with regard to the "Emergency" courts and the specific enjoining of jurisdiction of any other courts, where these inroads on the Constitution were sustained by the supreme Court.

Yes, these were *wartime* matters during the 2nd World War and might well be appropriate in those unique circumstances, but when one realizes that some of these wartime measures continued for years after the end of the War, certain questions and concerns do arise about the nature and scope of such authority.

Continuing on this important subject, Plaintiff cites the case of ***Burke v Kline Construction 260 US 226*** in which the supreme Court held:

"The effect of these provisions is not to vest the jurisdiction of the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the original jurisdiction of the supreme Court is derived directly from the Constitution. Every other court created by the general government derives its authority wholly from the authority of Congress. That body may give, withhold, or restrict such jurisdiction *at its discretion*, provided that it not be extended beyond the boundaries fixed by the Constitution. *** The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it *requires* an act of Congress to confer it. *** And the jurisdiction having been conferred may, at the wil of Congress, be taken away in whole or in part; *and if withdrawn without a saving clause all pending cases cognizable when commenced must fall.*"

Now this decision was authored by Justice Sutherland and supported by Justices Van Devanter, McReynolds, and Butler the infamous "*Four Horsemen*" who later valiantly and patriotically opposed the fascist New Deal enactments of FDR and upon whose judgment and honor Plaintiff relies and is particularly appreciative; accordingly if these Justices could entertain the opinion that *Sheldon* and *Cary*, supra were good law, then it *must* be for the reason that they knew that there *were* remedies in the State Courts of the type sought by Plaintiff herein.

Nor has this matter of limiting the jurisdiction of the judicial department of government been overlooked by the Executive branch, most especially the Roosevelt Administration (with FDR being an *admitted admired* of "Il Duce" -- Benito Mussolini, and the *fascist* system he implemented in Italy:

> "Roosevelt continued to explore ways to deal with the Court. A week after the *Butler* decision, he wrote (Attorney General) Cummings "What was the *McCardle* case ...? ( FDR did *NOT* know about this *very* famous decision of the supreme Court on the subject of the *limits on martial law* ??!! -- ed) I am told that the Congress withdrew some act from the jurisdiction of the supreme Court". The Attorney General replied: "The case of *ex parte McCardle* ... is one of the *classic* (!?? --ed) cases to which we refer when considering the possibility of *limiting the jurisdiction* of the Federal Courts. This whole matter has been the subject of *considerable* study in this Department, and, in the view of recent developments, is apt to be *INCREASINGLY IMPORTANT*."

FDR to Cummings Jan. 16th, 1936; Cummings to FDR Jan. 22nd

From "*The Supreme Court Reborn*" page 99
By William E. Leuchtenberg (1995)
ISBN 0-19-508613-9

and:

"Both Roosevelt and (Attorney General) Cummings agreed that the Justice Department should continue to seek out solutions for the impasse (with the supreme Court -- ed). A week after the 'horse & buggy' conference, one of the Attorney General's aides, Alexander Holtzoff, who was to be a central figure in the search for a plan, sent Cummings a memorandum responding to the suggestion that the Court might be stripped of *most or all* of its appellate jurisdiction (see *Ex Parte McCardle 7 Wall 506* -- ed). When Holtzoff explained that such a proposal would encounter too much opposition and still not eliminate all the problems confronting the Administration, Cummings was not satisfied and told him to develop his point "a little more fully". On June 22[nd], Holtzoff came up with another five page memorandum on the question, but the matter did not end there. On August 15[th], W.W. Gardner at the Justice Department prepared a 14 page study for the Solicitor General in which he, too, looked into whether the "power of the supreme Court to pass upon the *constitutional validity* of congressional legislation might be *abolished or restricted* by an Act of Congress". But he also found objections, and the quest *continued*.

Holtzoff, Memorandum for the Attorney General

Cited in "*The Supreme Court Reborn*" page 93

By William E. Leuchtenberg (1995)

ISBN 0-19-508613-9

And let's be frank here: the use of one of these statutes, or another one, ***unknown and unknowable*** to Plaintiff, is going to be used as "authority" to dismiss the instant case, probably that old war horse 26 USC 7421, and see to it that constitutional challenges to the ***usurpations*** of those behind the de facto government (read any of the excellent works of Antony C. Sutton on just who these folks are !) to keep all Americans under the thumb of the ***military*** government based on some or another pretended "emergency" (see e.g. ***Essays on Emergency Powers Congressional Record Senate Vol 119 Part 129  93rd Congress 1st Session Nov. 19, 1973, Youngstown Steel v Sawyer 343 US 579)*** continue on unabated.

How is the Citizen thus to know if the federal district courts have ***any*** judicial Power to address ***any*** given issue of law and whether they can lay the statute beside the Constitution and see if the former conforms to the latter (***US v Butler 291 US 1***), ***Article VI, Section 2***) ??

Plaintiff is thus of the opinion that if in fact Congress does ***NOT*** have the duty to vest the federal courts with such jurisdiction and venue, then the only reason this is so is because a State Citizen, such as Plaintiff claims to be (See ***Minor v Happersett 21 Wall 162, Scott v Sandford 19 How 393, Van Valkenburg v Brown***

*43 Cal 43, US v Cruikshank 92 US 542, Colgate v Harvey 296 US 404) HAS* his remedy in a State Court, quite possibly one exercising supplemental and concurrent jurisdiction pursuant to *Section 11 of the Judiciary Act of 1789*.

As much was acknowledged by Justice White in his opinion in *Palmore v US 411 US 389*, another very fine jurist and legal craftsman, with whom Plaintiff was in disagreement in the decision of this case when he said, about the Congressional power over the Courts of the united States, that:

> "That body was *not* constitutionally required to create inferior *Article III* courts to hear and decide cases within the judicial power of the United States, including those *criminal* cases arising under the laws of the United States. Nor, if inferior courts were created, was it required to invest them with *all* the jurisdiction it was authorized to bestow under *Article III*. *** Congress plainly understood this, for until 1875 (*after* the 'enactment' of the 14[th] "amendment" -- ed) Congress refrained from providing the lower federal courts with general federal question jurisdiction. Until that time, the *state courts* provided the *only forum* for vindicating many important federal claims. Even then, with exceptions, the *state courts remained the sole forum* for the trial of federal cases not involving the required jurisdictional amount, and for the most part *retained concurrent jurisdiction* of federal claims properly within the jurisdiction of the lower federal courts."

Plaintiff is, however, firmly of the opinion that Justice Douglas' dissent *Palmore*, supra, is the better argument, and

wholly consistent with Justice Story's decision in _**Martin**_, supra;
Douglas pointed out the constitutional infirmities thusly:

> "We take a great step backward today when we deprive our federal regime in the District of that _**judicial independence**_ which helps insure fearless and evenhanded dispensation of justice. No Federal Court exercising _**Article III**_ power should be _**made a minion of any cabal**_ that from the accidents of politics comes into the ascendancy as the _**overlord**_ of the District of Columbia. That effort unhappily succeeds today and is in disregard of one of our most cherished constitutional provisions.

> As Mr. Justice Black and I put it in our dissent in _**Glidden v Zdanok 370 US 530**_, the essential problem in dealing with a "judicial" function exercised by an Article I court concerns the standards and procedures employed. If the power exercised is "judicial power" defined by _**Article III**_, as was true in the present case, _**then the standards and procedures must conform to Article III, one of which is an independent judiciary**_."

The logical conclusion from these facts is that the federal district courts have been, in effect, been legislatively configured much as _**territorial**_ tribunals without either the need or necessity to vest them with _**any**_ of the judicial Power of the united States (see e.g. _**American Insurance v Canter 1 Peters 511, DeLima v Bidwell 182 US 1, Balzac v Porto Rico 258 US 298**_).

If the remedy is *not* available in the State Court, then the only possible conclusion is that the Legislative and/or Executive branches of government have somehow assumed *dictatorial* powers yet possessed by the English Parliament that were rebelled against in the American Revolution.

Now there may be issues that implicate federal questions arising in the instant case, but first and foremost Defendant's removal of Case No. 464802 is, at best, premature, for the issue of Plaintiff's status & standing, based as it is on his assertion of his lawful de jure State Citizenship, is a matter that has *NOTHING* whatever to do with federal law (Plaintiff *not* being subject to either Congress' powers of immigration or naturalization (*Article I, Section 4*) and must be decided in a State Court of common law general jurisdiction in the first instance.

It may thus appear that the Constitutionality of the 14th "amendment" is directly at issue, but not only is this *not* the case (at the present time and in the instant case), the issue of State Citizenship, and the designation of Electors, are matters of State law (see e.g. *Federalist Papers Nos. 44, 45* (Madison), *Scott v Sandford 19 Howard 393*).

Also in this regard  we find Joseph Story, one of the eminent scholars of the Constitution, and himself a justice on the supreme Court of the united States for 34 years early in the history of the Republic, asserting, in his *Commentaries on the Constitution* (1833), a comparatively *contemporaneous* exposition of the principles of the Constitution,  in *Vol. 1. Section 510*, with regard to State Sovereignty that:

> "In the next place, the ***state governments*** are, by the very theory of the Constitution, ***essential constituent parts*** of the general government. ***They can exist without the latter, but the latter cannot exist without them***. Without the intervention of the state legislatures, the president of the United States cannot be elected at all; ***and the senate is exclusively and absolutely under the choice of the state legislatures***. *** Everywhere the state sovereignties are represented; and the national sovereignty, as such, ***has no representation***.

Finally, the magnificent veto message of President Andrew Johnson of the Civil Rights Bill of 1866 (14 Stat. 27), found at *Messages and Papers of the Presidents Vol. 5.  pp 3603-11*, the first enactment of this sort attempted by Congress, sets forth the undeniable law of Citizenship and State sovereignty as it stood prior to the 'adoption' of the 14th "amendment" thus:

> "By the 1st section of the bill, all persons born in the United States, and not subject to any foreign  power, excluding Indians not taxed, are declared to be citizens of the United States. This provision comprehends the Chinese of the Pacific States, Indians subject to

Motion to Remand Page 16 of 32

taxation, the people called Gypsies, as well as the entire race designated as blacks ... Every individual of those races, born in the United States, is by the bill made a citizen of the United States. *It does not purport to declare or confer any other right of citizenship than Federal citizenship. It does not purport to give these classes of persons any status as citizens of States*, except as may result from their status as citizens of the United States. *The power to confer the right of State Citizenship is just as exclusively with the States* as the Power to confer the right of Federal citizenship is with Congress.

It should be borne in mind about this first Civil 'Rights' Act that it contained the following language pursuant to the 'rights' to be conferred upon those subject to it's terms:

"Be it enacted .. that all *persons* born in the United States and not subject to any foreign power, excluding Indians not taxed, are *hereby declared citizens of the United States*; and *such citizens*, of every race and color ... shall have the same rights, in every State and Territory in the United States ... as is enjoyed by *white citizens* ... "

Now if there are no longer recognized any *white citizens*, just whose rights might be used as a barometer for those possessed by the recipients of the benefits of the Civil 'Rights' Act, and by what measure are their 'rights' to be determined ??

To the extent that the 14th "amendment" is a subject of pleading in the instant case, in addition to what has already been established regarding the *proper application* of its terms and provisions, it seems that the primary purpose of this "amendment" was to bestow citizenship on *corporations*:

Motion to Remand Page 17 of 32

"None of the states which ratified the amendment had, at the time of the ratification, *any idea of the amendment's true import*. They thought it was intended *to protect the colored people* of the South. Ohio and New Jersey tried to recall their ratification when they learned that the *real purpose* of the amendment was *to protect corporations*, but the secretary of state declared that a ratification, when once given, could not (??- ed) be rescinded.

All Americans have a dual citizenship. They are citizens of the United States and of the state in which they live. One of the effects of the 14th amendment was to *augment* (!!--ed) the importance of the citizen's relation to the federal government and to *diminish* accordingly the authority of the states. It was a move toward *centralization* of authority, and was a part of the plan of *large financial interests and industrial corporations* to gain control of the nation's economic life."

From *"A New American History"*, page 304
By W. E. Woodward
Garden City Publishing Co. 1938

With regard to 14th "amendment" citizenship, and with due regard to some apparent Constitutional inconsistencies in regarding this as the only source of citizenship, we find that on it's Web page for "citizenship", that the Department of Homeland Security cites *verbatim* Section 1 of the 14th "amendment" and describes this 'citizenship' in terms of being the most important *immigration* "benefit" that the *USCIS can grant* (akin to the "benefits" available under the social (in)security program ??-- see e.g. *Flemming v Nestor 363 US 603* for the 'dope' on the nature of such "benefits" and the *lack* of property rights therein).